# ABRAHAM OTTENBERG

*vs.*

## THE RYAN & RILEY CO., ET AL.

*Municipal Corporations: Sewers, construction of—; damages to property; evidence of former condition; official records of condemnation. Witnesses' examination: Illustration on blackboard: discretion of Court. Experts: Who are—; when not admissible. Appeals: Immaterial errors.*

Immaterial errors in the rulings of the court below are no ground for reversal on appeal when it does not appear that any injury to the appellant resulted thereby.                p. 49

Whether a witness should be allowed to go to a blackboard and illustrate his testimony, for the instruction of the jury, is a matter within the discretion of the trial court.          p. 43

Where a municipal corporation has the right to construct a sewer, it is not responsible for injuries to adjacent property, unless the work is done improperly or negligently.          p. 45

When the owner of a house built insecurely on filled ground, believes that a sewer is to be constructed near it, and is warned to take steps to protect the building, it is his duty so to do.
pp. 42-43

The sufficiency of a witness' knowledge to qualify him as an expert is usually to be left to the discretion of the trial Court, and its rulings should be final, unless clearly erroneous.     p. 45

Md.]                          Syllabus.

But the rules for the admission of expert witnesses should not be relaxed.                                              p. 45

In an action for damages brought against the City of Baltimore by a property owner, who claimed that his house had been injured by the faulty manner in which a public sewer had been constructed in made ground near the plaintiff's house, a book kept by the city, properly authenticated by the clerk whose duty it was to keep the book, in which copies of notices as to property condemned because of its dangerous condition were contained, was: *Held*, admissible in evidence, to show the condition of the house before the sewer was constructed.

pp. 46-47

The testimony of experts should not be admitted as to matters which are within common knowledge and on which a jury is competent to pass.                                    p. 45

*Decided January 11th, 1917.*

Appeal from the Superior Court of Baltimore City. (AMBLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BURKE, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Meyer Rosenbush,* for the appellant.

*Vernon Cook* (with whom was *Edwin W. Wells* on the brief), for Ryan & Riley Company, appellee.

*Edward J. Colgan, Jr., Assistant City Solicitor,* adopted the same brief and filed the same on behalf of the Mayor and City Council of Baltimore, appellee.

BOYD, C. J., delivered the opinion of the Court.

The appellant (plaintiff below) sued the appellees (defendants) for damages alleged to have been sustained by him

by reason of injuries to his property known as No. 2101 Edmondson avenue, corner of Pulaski street, in the City of Baltimore, caused by a sewer being negligently, carelessly and unskillfully located, dug and constructed in the bed of Pulaski street, adjoining the plaintiff's property, by the defendants. A trial of the case resulted in a verdict for the defendants and this appeal was taken from a judgment entered thereon.

The plaintiff occupied the first story of the above property for a bakery and confectionery store, and he used the second story of that building and the building adjoining, No. 2103 Edmondson avenue, as a dwelling. The Ryan and Riley Company was a contractor employed by the city for building a section of the municipal sewerage system of Baltimore, including a sewer on Pulaski street. The work was done by tunnelling—the tunnel being 25 feet below the surface of the street, and three feet wide at the top, five feet wide at the bottom and about five feet high. The plaintiff's two houses were a part of a row of nine houses erected by Charles L. Fulton, fronting on Edmondson avenue, and being two stories high. He purchased No. 2101 under a contract with Fulton dated in December, 1910, and took possession in June, 1911. Later he purchased No. 2103.

The Ryan and Riley Company gave the plaintiff due notice that they were about to proceed with the work of excavating and constructing the sewer on Pulaski street, and notified him to take such measures as he found necessary or proper for the protection of his property—stating they would begin the work on or about July 5th, 1916. The plaintiff offered evidence tending to show that prior to the construction of the sewer his house was in good condition, while that of the defendant was to the effect that the land on which the houses were built was formerly an ice pond which had been filled up to the street level, making a fill of about thirty feet of an unsubstantial character and that there were cracks in the house before the sewer was constructed.

There are fifty-four exceptions in the record, the first fifty-three presenting rulings on the evidence, and the fifty-fourth those on the prayers. The plaintiff offered one prayer, which was granted, and the second, fourth and fifth offered by the Ryan and Riley Company and the third offered by the city were also granted. It will not be necessary to pass on all of the exceptions separately, and we will as far as can be properly done consider those in reference to the evidence in groups. We will consider the first, second and third together. The plaintiff was the first witness called. He said that prior to the building of the tunnel the wall of his house on Edmondson avenue was solid and not a crack in it and there was no indication of a crack on the Pulaski street side; that after the sewer was begun cracks commenced to develop from the corner on the Edmondson avenue side and cracks in different places developed in the wall on the Pulaski street side. He said the work began a week before July 5th, the time mentioned in the notice of Ryan and Riley Company, by sinking a shaft on Pulaski street at the corner of the alley in the rear of his house. That on July 15th he noticed the curb at the corner of Edmondson avenue and Pulaski street had broken where it joined, and he described a number of injuries to the property which he attributed to the work on the sewer—placing emphasis upon an injury to his water service pipe, which he contended caused much damage. On cross-examination he said that he had agreed to pay $2,000 for the corner house from which there was a deduction of $250.00 because Pulaski street had not been paved. He was then asked: "Did you not get that deduction partly by reason of the fact the house was even then in such a bad condition that you were fearful it was going to be condemned?", and replied, "No, sir." He was then told, "Look at this paper which I now show you which purports to be a receipt given by Charles L. Fulton, and tell us whether that does not refresh your recollection on the question I just asked?" That was objected to, and the objection was overruled, which

ruling constitutes the first exception. The witness said, "It is not necessary to refresh it; I know what is in here." He then said he recognized the paper and that it was a receipt given to him by Mr. Fulton for this house. The plaintiff objected to the reading of the paper but it was admitted and the second exception taken. He was then asked: "This paper under date of December 13th, 1910, says that it is expressly understood and agreed that said payment—that is the $200. shall in no manner be construed as a waiver of the physical condition of the aforesaid property, and should the same be condemned by the Building Inspector of Baltimore City or his assistants at any time before the final consummation of the aforesaid purchase—I, the undersigned, on behalf of the owner of said property, hereby agree to do whatever may be required by said Building Inspector at the expense of the owner to make the aforesaid property safe and sound in accordance with the requirements of the building law of Baltimore City—if that house was then in good condition, why did you require Mr. Fulton to put that provision in his receipt?" That was objected to, and an exception taken to the ruling presented by the third bill of exceptions. We find no error in either of those rulings, as by reason of the positive denial of the plaintiff of any previous trouble about the condition of the house, the receipt was relevant and important, unless plaintiff could explain it, which he was given the opportunity to do.

In the fourth exception is the question: "Did you observe the character of the work that was being done when they built the moving picture show across the street from you, in reference to the depth of the fill?" His answer was: "They sank wells," and when asked whether he could tell from his observation of that work the depth of the fill he said, "No, sir." Any possible injury that could have been done the plaintiff is not apparent when the answer is considered, but if defendants' theory was correct, it was some evidence tending to show that the plaintiff was aware of the character of

the ground his house was on, reflecting upon the necessity for him to take proper care of it while the sewer was being constructed.

The fifth, sixth, seventh, eighth and ninth exceptions were to the ruling out of questions asked Mr. Harn. He was an experienced contractor and builder, and said that in the course of building operations it was necessary to dig trenches for foundations, and hence he was familiar with excavations of that sort, but he admitted he was not experienced in tunnel work of the character that was being done by the defendants, and hence he could not speak as an expert as to that, and we find no error in either of those rulings.

In the tenth exception, Mr. Harn, who repaired the house after the sewer was built, spoke of the grouting he used. He was asked: "Assuming no opportunity exists in a fill of that kind, filled ground of that kind, is that the usual and proper and safe thing to do, to grout in there as you have described? A. In my judgment it is; that was the method adopted by the Baltimore and Ohio on Howard street to fill voids. Q. When they dug the tunnel on Howard street? A. Yes." The defendants then made a motion to strike out the testimony relative to the Baltimore and Ohio, which was granted, and the plaintiff excepted. How the method adopted by the Baltimore and Ohio as to Howard street, which was, judging from the time O'Brien's case was in this Court, probably a quarter of a century ago, could aid the jury as to what was proper under the conditions on Pulaski street, we are unable to see. Moreover, that part of the answer was wholly immaterial and striking it out could do no harm. The ruling in the eleventh exception was clearly proper, and, as the jury found for the defendants, could not in any way affect the judgment. The twelfth presents nothing for us to rule upon. Whether or not a witness should be permitted to go to the blackboard in the court room, and show what he meant by "the angle of repose" he had spoken of was manifestly in the discretion of the trial Court. The questions in the thir-

teenth, fourteenth and fifteenth exceptions relative to "the angle of repose" were in the discretion of the trial Court, as they were asked while the witness was under re-direct examination. He had been examined at length in chief and was evidently a very intelligent witness. Unless there is a clear abuse in the exercise of the discretion, this Court can not interfere. There was no reversible error in either of those exceptions.

The sixteenth, seventeenth, eighteenth, nineteenth, twentieth and twenty-first excepions relate to rulings on the testimony of Joseph U. Isaacs and will be considered together. Mr. Isaacs had been a civil engineer for twenty-two years and had been connected with some sewer construction in the city, outside of that done by the Sewerage Commission. After giving his experience at some length, he was asked, "I am going to ask you whether there is any recognized method of tunnelling or drifting, I believe they call it, in filled ground, such as exists on Edmondson avenue and Pulaski street, recognized safe and standard method known?" That was ruled out on objection and the sixteenth exception taken. All that his testimony shows that he knew about the method on Edmondson avenue and Pulaski street was that he had heard the evidence of Mr. Harn, the contractor and builder, who went into the tunnel while the work was going ·on and described the work being done. However competent Mr. Isaacs may be as a civil engineer and in the kind of work he had been engaged in, he admitted that he had not done any tunnelling work in made ground, and the kind of work he had done was not the kind to qualify him to criticise or speak of work done by competent contractors, as presumably Ryan and Riley were, in the absence of anything to the contrary. The admission of the testimony of experts has not always been as carefully guarded by the courts as it should be. As was said by JUDGE BURKE in *Harris* v. *Consolidation Coal Co.*, 111 Md. 209, 219: "The principal object in view in the examination of expert witnesses being to elicit from them

opinions or conclusions from the facts, rather than the facts themselves, this species of testimony forms in this respect a notable exception to well established rules of evidence. The rules governing the introduction of this species of testimony should, therefore, not be relaxed, but should be strictly enforced with the greatest caution and discrimination," and he quoted with approval what was said in *Chat. Ore & Iron Co.* v. *Blake,* 144 U. S. 476, that: "How much knowledge a witness must possess before a party is entitled to his opinion as an expert, which, in the nature of things, must be left largely to the discretion of the trial Court, and its rulings thereon would not be disturbed, unless clearly erroneous."

Applying these principles to this case, we can not say that there was such error, in refusing to allow the question quoted above to be answered, as would justify us in disturbing the judgment. We do not see the relevancy of the question as to the matter of tunneling or drifting in solid earth, as asked in the seventeenth exception. It is clearly shown that this work was not being done in solid earth, but in filled ground. The question ,"What is the purpose of grouting in connection with tunnel work?" asked in the eighteenth exception can scarcely be said to be one for an expert, even if the witness had been held to be qualified. A jury at this day ought to know the purpose of grouting, without being told by an expert. What we have already said as to the witness not being qualified as an expert may be sufficient in disposing of the nineteenth exception, but it seems to us that an answer to that question would have been wholly speculative. But in addition to that, even if the digging of the trench in the bed of the street affected the foundation of the house, that was wholly immaterial unless there was negligence in the work The defendants had the right to construct the sewer, and unless it was improperly or negligently done they were not liable. *Hanrahan* v. *Baltimore City,* 114 Md. 517. What we have already said as to the qualification of the witness as

an expert will relieve us of the necessity of referring further to the twentieth and twenty-first exceptions.

The twenty-second exception was to a question asked Charles Hildebrant, Jr., and the twenty-third to refusing to grant a motion to strike out the answer. He was a builder but had been with the Sewerage Commission about two years and it became his duty to examine the property in question before the sewer was begun. He did that and made notes of his examination. On cross-examination he had testified that in his opinion a crack in the rear wall of the house was caused by the settlement of the side wall, pulling the east pier with it. On re-direct examination he was asked to explain why he said that the crack in that wall led him to believe there was a sinking in the side wall. We do not understand how there could be any objection to that. As the plaintiff had brought out his opinion on cross-examination, the defendants on re-direct examination had the right to let the jury understand upon what his opinion was based. Nor was there any error in the twenty-fourth and twenty-fifth exceptions taken while that witness was still on the stand.

The twenty-sixth, twenty-seventh, thirty-eighth, forty-third, forty-fourth, forty-fifth, forty-sixth and forty-seventh relate to the same matter. William G. Reilly, who was a stenographer and book-keeper at the Building Inspector's office and had been employed in that office ten years, said they kept a record of the buildings that had been condemned, and identified the book. He said the book contained an exact copy of what is sent to the owner—one being issued to the Inspector, one to the owner of the building and one being kept in the book. The notice was addressed to C. L. Fulton, dated October 11, 1911, and served on Mr. Fulton the same day. It notified him that his premises on the south side of Edmondson avenue were in such a condition as to be a menace to the safety of persons and property, "in that the buildings are hereby condemned on account of not being properly

constructed." The book was offered in evidence and objected to, but the Court admitted it, *subject to exception,* upon the proffer of defendant's counsel to follow up the evidence. That ruling is presented by the twenty-sixth exception and the twenty-seventh was from a refusal of the Court to strike it out. There was no error in those rulings. It is true that the notice was addressed to Mr. Fulton, and that the plaintiff had before that date purchased the property, but the houses were built in one block, at the same time, and on the proffer of the defendant's attorney to follow it up, the evidence might have become very relevant. If, for example. the defendant showed that the plaintiff had knowledge of the proceeding to condemn, and that it included this property, it would be in direct conflict with his evidence. He had testified that the property was in good condition—no trouble with it from the time he purchased it—and he also denied all knowledge of any condemnation proceedings. It was, however, admitted subject to exception, and the motion to strike it out was apparently made before any further evidence was produced. The evidence of the defendants tends to show that the plaintiff did know of the complaint of the city authorities about these houses, including the one on the corner. Mr. Fulton testified that he received a verbal notice before the plaintiff purchased the property to make certain changes, which he did. Mr. Shaffer, the inspector, said he did condemn all the property, including the bakery.

Charles S. Schaffer, a contractor and builder, and who was general inspector of the Inspector of Buildings in Baltimore in 1911, testified that he had examined the bakery and the house immediately adjoining, and also the surrounding property on Oct. 11, 1911, and said that the property was cracked and settled, evidently due to poor foundations; the fill all around there was an ash dump, garbage, anything from an umbrella frame up to a bed spring. He said he made a report, and was handed a paper and asked whether that was his report, was asked to read it to refresh his recollection.

He was then asked: "Now you have read over that report, can you tell us anything more in regard to the conditions there?" That was objected to and the ruling on that is in the forty-third exception. The witness answered by saying his testimony was practically all he could say but added, "Witness condemned all the property, including the corner bakery." The report was not offered by the defendant, but the plaintiff on cross-examination asked witness if the report included the corner. He replied that it did, and inquired whether he should read it. It then appears in the record that the counsel for the plaintiff objected to it and moved that it be stricken out, because it does not show that it applied to this particular house. The Court overruled the objection and that action constitutes the forty-fourth exception. There was no reversible error in the forty-third exception, as regardless of other questions, the witness said his testimony was practically all he could say, and what was said in addition, was a repetition in part of what he had previously said. In regard to the forty-fourth, the record does not show that the defendants had introduced the report in evidence, but that they had only given it to the witness to refresh his recollection. It does, however, refer to the "building on corner of Pulaski street occupied as a bakery," and hence could not be struck out for the reason given by the plaintiff's attorney. Inasmuch, however, as the report had been referred to in the presence of the jury, although not read to them by the defendants, it was fairer to both sides to let them have it, and see for themselves what was in it. In the forty-fifth exception the witness was asked to state the condition of the properties immediately south, and the Court overruled an objection to it. We do not understand how that question could have been admissible. The witness answered, "Very bad; all very bad," but according to the record the Court at once said the objection to that was "good as to bad or very bad." The defendants asked the question, "Was the condition of the fill the same as here?" That was in the forty-sixth exception and was admissible. Then in the forty-sev-

euth exception the witness was asked: "What was the condition of those houses immediately south of the houses on the fill you speak of? Describe their physical condition?" We suppose it was intended for the jury to infer that as those on the fill were in bad condition, the fill, and not the sewer, was responsible for the condition of the corner property. That question should not have been allowed, as there might have been causes for their conditions which did not apply to the corner house, but while it was error, we are not prepared to say it was reversible error. No jury of ordinary intelligence could have been misled by it. It would not reflect credit upon our practice, if this Court was compelled to reverse a judgment for an error which must have been as harmless as this was. We therefore find no reversible error in any of those exceptions.

John Moore, a civil engineer, who had been employed by the Sewerage Commission for the past nine years, and had "responsible charge" of the tunnel which went along the house, described the method of doing the work, conditions there, etc. He spoke of the service water pipe from the plaintiff's property, which had been broken or parted, that the pipe was a three-quarter inch pipe and spanned an opening about thirty inches. He was asked, "From your experience in sewer building, would you say three-quarter inch service pipe under those conditions, spanning a space of 30 inches, requires a support?" An objection to that was overruled, and the ruling constitutes the twenty-eighth exception. The witness answer, "No, sir." And was asked: "Have you seen other water pipes within the span of that there? A. Hundreds of them. Q. Did you ever support them? A. No, sir; not a small pipe like that." All of that was objected to and the twenty-ninth exception taken. There can be no question about the rulings being correct. Nothing is said of the thirtieth, and we suppose it is not pressed. We can see no error in the thirty-first or thirty-second exceptions, which were also taken while Mr. Moore was on the stand. The thirty-third, thirty-fourth, thirty-fifth, thirty-sixth and thirty-

seventh related to the receipt referred to in the first, second and third exceptions, and require no further discussion.

The thirty-eighth exception does not seem to be pressed, and we can not understand upon what ground the question was objected to. The thirty-ninth was taken to the refusal of the Court to allow counsel for the plaintiff to examine the witness Kaufman, as to entries in the book he had for the purpose of refreshing his recollection. The brief of the appellant states that the witness produced the book while under direct examination, but that does not clearly appear. It was not offered in evidence, and moreover, at the time the objection was made the witness was under re-cross-examination, and he had already gone into those questions on cross-examination, and after the re-direct examination, which did not refer to the book, the questions were asked which were objected to. There was no reversible error in that ruling. Nor was there any in either the fortieth, forty-first or forty-second exceptions taken when the witness Lynch was on the stand. The forty-third, forty-fourth, forty-fifth, forty-sixth and forty-seventh were considered in connection with the twenty-sixth and twenty-seventh.

J. Robert Fallon testified he was superintendent and foreman for the Ryan and Riley Company, and worked on the Pulaski street sewer. The water service pipe broke, and he said it was not over ten minutes after it broke that he had the water turned off. He got a plumber and had it repaired, and offered to pay the bill—the check for which the plaintiff testified about when he was on the stand. He was asked: "Did Mr. Ottenberg at that time make any claim to you for a large amount of money due him for damages to his house?" An exception to the allowance of that was taken, and it embraces the forty-eighth exception. We do not see the relevancy of that question, but it was harmless. The plaintiff had offered the check in evidence, doubtless to show some admitted liability on the part of the defendants, but there was nothing to show that Mr. Fallon had any authority to settle a claim for damages, and the question was not relevant, but

could do no possible harm that we can see. The forty-ninth and fiftieth were in reference to the admission of some photographs, but no injury was done the plaintiff.

William A. Ryan, of the plaintiff company, shows by his testimony he had had large experience in such work. He was at this tunnel about once a day; that Mr. Fallon had charge, and had several foremen under him; that Mr. Moore had charge of the job in an engineering way for the Sewerage Commission, and he had several inspectors. He was asked: "How the methods used in constructing this tunnel compared with the methods ordinarily used in similar work by ordinarily careful and prudent sewer builders?" An exception to permitting that question to be asked constitutes the fifty-first, and the witness having said that, "The methods used here were the best possible methods that could have been used," a motion to strike out that answer was overruled and the fifty-second exception taken. We can see no possible objection to that question. He said he observed the conditions of the tunnel very carefully and showed that he had considerable experience in soft-ground tunnels, particularly in Baltimore.

The offer to prove by Mr. Graham certain matters stated in the record was made at the conclusion of the case, after the defendants had rested. It was clearly evidence in chief and was in the discretion of the trial Court, whether it should be admitted at the time. As the jury was sworn on March 17th and the verdict was not rendered until the 23rd, the Court evidently concluded that sufficient time had been allowed for the trial of the case. To open it up then on questions of the character proposed might have prolonged the trial to an unreasonable length, but it was for the trial judge to determine, and hence there is nothing which could authorize us to disturb the judgment by reason of the ruling in the fifty-third exception.

It may be well to add that by reason of the great number of exceptions, we have not attempted to discuss many of them at length, but have given them careful attention and consideration, and while we have pointed out some errors in reference to the testimony, none of them were of a character which would justify us in disturbing the judgment. Indeed, when we see how many exceptions were taken, the case is peculiarly free from injurious errors.

It only remains to refer briefly to the rulings on the prayers. The one prayer offered by the plaintiff was granted, and hence there is no ground for complaint in reference to instructions asked for by him. Those offered by the defendants seem to be in accordance with the principles announced in this State—particularly in *Hanrahan* v. *Baltimore City,* 114 Md. 517, and as no special objection to either of the three granted at the instance of the Ryan & Riley Company or to the one granted at the instance of the city have been pointed out, we will not prolong this opinion by discussing them. There was no error in the rulings as to either of them. It follows that the judgment must be affirmed.

> *Judgment affirmed, the appellant to pay the costs.*