## S. J. VAN LILL COMPANY *v.* FREDERICK CITY PACKING COMPANY.

[No. 6, April Term, 1928.]

Decided May 4th, 1928.

The cause was argued before BOND, C. J., PATTISON, ADKINS, URNER, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Edward J. Colgan, Jr.,* and *Francis Key Murray,* with whom were *Karr & Colgan* on the brief, for the appellant.

*Philip B. Perlman,* with whom was *Wirt A. Duvall, Jr.,* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

The Frederick City Packing Company, a corporation, is engaged in the business of manufacturing and selling canned goods. The S. J. Van Lill Company, a corporation, is engaged in the City of Baltimore in the manufacture and sale of various food products. Thomas H. Roberts & Company, a corporation, is engaged in the commission brokerage business in Philadelphia, and Howard E. Jones, trading as Howard E. Jones & Company, is engaged in a similar business in Baltimore, and they were all so engaged in 1925. Thomas H. Roberts & Company, having been since 1891 the selling agents for the Frederick City Packing Company, in 1925 sold all the canned goods manufactured by it.

In January, 1925, Howard E. Jones telephoned orders to Roberts & Company for 11,000 cases of canned corn, but later directed it to make out a contract for 10,000 cases of that order in the name of the S. J. Van Lill Company. On January 23rd, 1925, Roberts & Company wrote Jones a letter in which it said:

Referring to your telephone order today; we have booked you for—

"5,000 cases of the Frederick City Packing Co.'s No. 2 tin standard unsweetened corn, under Pride of Valley label, out of the 1925 packing, at $1.00 per dozen f. o. b. Frederick, Md., to be covered by our regular pro-rata contract, but with 75% delivery guaranteed. Subject, however, to our approval of the names of the buyers, which you will submit to us.

"This also applies to additional order 'phoned in for 6,000 cases more at $1.00 per dozen, f. o. b. Frederick, Md., and we have protected you likewise on this, making a total of 11,000 cases awaiting buyers' names."

Jones then executed a memorandum of sale, dated January 23rd, 1925, which contained this statement:

"Sold to Howard E. Jones & Co., Baltimore, Md., for account of Thos. Roberts & Co., Philadelphia:

"11,000 cases of No. 2 Frederick City Packing Co. Standard Unsweetened Crushed Corn at $1.00 per dozen.

"Remarks:

"If packer's label to be used, buyer's option of the following brands: Proclamation, Pride of Valley, Artic, Richland, Mountain View or Early Morning Bloom.

"If shipped unlabeled or under buyer's label, allowance of $1.50 per M. for labels.

"1925 Pack.

"Future contract will follow:

"Terms: Cash less 1½% ten days. F. O. B. Frederick, Md.

"Ship: When packed—shipping instructions to be furnished.

"Howard E. Jones & Co.,
"Brokers."

On January 24th Roberts & Company wrote Jones as follows, in which it stated in part:

"* * * We guarantee the pack this year to equal last year's samples. We are sending samples under the Pride of the Valley label, that will represent what we guarantee to deliver for future delivery, namely,

strictly unsweetened crushed corn. Now if they want the extra sweetened this would cost them 5c per dozen more, but these samples only represent the unsweetened, as they did not pack any of the extra sweetened last year."

On February 7th, 1925, Jones wrote Roberts & Company this letter:

"As per telephone conversation, please insert S. J. Van Lill Company, Baltimore, Maryland, as the buyers for the 10,000 cases of Frederick City, 1925 pack corn you have booked for us.

"On the 1,000 cases of the same goods insert Wagner Brothers, Baltimore, as the buyers.

"Also let us have ½ dozen tins of No. 10 last year's pack, so that Van Lill can start working on same, and send us samples of the different labels that you will use on the pack of Corn, as we understand you have several labels there.

"Let us have contracts for buyers' signatures."

On February 9th, 1925, Roberts & Company wrote Jones that:

"We have your letter of the 7th and as requested we have assigned 10,000 cases of your purchase of Frederick City Corn to S. J. Van Lill Co., Baltimore, and 1,000 cases to Wagner Bros., and are enclosing contracts herewith."

And on February 13th, 1925, Jones wrote Roberts & Company, inclosing a "properly signed contract covering your sale to S. J. Van Lill Company of 10,000 cases of Frederick City Packing Co.'s corn," described as "No. 2 tin Standard Unsweetened Corn" at $1.00 per dozen f. o. b. factory under packer's label. Under that contract the seller agreed to deliver seventy-five per cent. of the goods sold, and to furnish as promptly as possible "cans well filled with sound wholesome fruit" of the "packing of 1925." It guaranteed that the goods sold should conform to the National Food and

Drug Act, and in lieu of a guaranty against "swells" made an allowance of one-quarter of one per cent.

On August 13th, 1925, Roberts & Company wrote Jones that the Frederick City Packing Company was demanding immediate shipping instructions for all corn orders, and on the following day Jones wrote giving shipping instructions for 725 of the 1000 cases sold to Wagner Brothers, and on August 19th, 1925, he wrote Roberts & Company as follows:

"It seems as though unsweetened corn doesn't sell—we have been offering our trade the orders booked for Lord Mott Company and S. J. Van Lill Company, as they informed us they could not sell this corn—buyers want sweetened corn.

"Now both of these buyers are anxious to sell this unsweetened corn. Can't you help them out? You know just what trade uses unsweetened corn. Your quotations today are $1.05 per dozen, factory—this corn was booked with you at $1.00 per dozen—we offer it to you today at $1.00 per dozen, factory. It strikes us that you would be only too glad to have it in your possession.

"We are making special efforts again this week to sell it and trust we will be successful, but don't you make shipment of either of these two orders until you have received specific shipping instructions from us. We know you aren't ready yet to ship, as you just started packing corn.

"We asked you to send us twelve samples, but you informed us you could not do so at this time. We wanted these samples to help us dispose of this corn, and then we could immediately give you shipping instructions, unless you can give us orders for it yourselves."

Again on the same day he wrote:

"Supplementing our favor of the 14th, after the 25 cases which we gave you instructions for of No. 2 Pride of Valley Brand crushed corn yesterday, there remains yet in Wagner Brothers order for 1,000 cases, 250 cases that no instructions have been given you on,

so you will please ship these 250 cases, and 750 cases part of the order booked for S. J. Van Lill Company, making 1,000 cases, in all, of No. 2 Pride of Valley brand standard crushed corn, to Howard E. Jones & Company, c/o B. & O. delivery Camden Warehouse, Baltimore, sending the invoice to us, made out in S. J. Van Lill Company's name.

"We are doing our best to dispose of this corn for Van Lill as per our letter to you earlier in the day."

Following that letter one thousand cases of canned corn were shipped by the Frederick City Packing Company as directed, and on August 29th, 1925, the Van Lill Company wrote Roberts & Company as follows:

"Referring to the 750 cases No. 2 tins Pride of Valley corn shipped in car consigned to Howard E. Jones & Co. as per your invoice of the 25th instant.

"Beg to advise that we drew samples from this car which has arrived at Camden Warehouses and compared with sample you sent us of last year's pack and there is as much difference as between night and day.

"This corn is bitter, tough, sloppy, poorly filled and yellow color. Sample of last year's corn shows up as a good consistency and white color.

"We, therefore, beg to advise that we cannot use this corn and same is at Camden Warehouses subject to your orders and disposition. * * *

"P. S.—We advised Howard E. Jones & Co. some days ago to send on samples of this new pack before making any shipments."

On August 31st it wrote another letter in which it said in part:

"Beg to advise that we cut additional cans today in Howard E. Jones & Co.'s office, of this lot, and found two cans that were sour and balance of the cans cut with nothing but water showing on the tops and no corn in sight, which shows that same is very poor fill and sloppy.

"Howard E. Jones & Co. has requested us to write you further, as they state that they had a telephone

conversation with you today in reference to this lot of corn, and that you requested us to make an offer on same.

"We beg to advise that we would not have this corn at any price, and, furthermore, wish to advise that, as the car that has just been shipped under date of the 25th instant represents the contract we have with you for 10,000 cases, we will not take any of this lot of corn and will consider the contract canceled out. We bought standard goods, and, therefore, we expected to get just what we bought."

But prior to those two letters, on August 22nd, 1925, the Van Lill Company had written Roberts that:

"We have had several cans of the Frederick City Packing Company's last year corn which our salesmen have shown to the trade, and they find it impossible to interest any of their customers in this corn for the reasons that it is sloppy.

"They also find that Sweetened Corn of a good consistency and superior pack is offered at lower prices than we can offer this corn of inferior quality.

"Now what we want you to do is send us twelve tins immediately, of this year's pack before you ship the car we ordered, which Howard E. Jones & Company has instructed you to ship, as we are afraid that all of our buyers that this car is sold to will reject same."

Following that correspondence some effort was made at arbitration, but it came to nothing, and the buyer having definitely refused to accept the goods shipped by the seller as under the contract, the seller resold them, and charged the buyer with the loss which resulted from the resale. The buyer refused to pay that charge, and this suit was brought in the Superior Court of Baltimore City to collect it. The case was tried by the court without the aid of a jury, and, at its conclusion, the court found its verdict for the plaintiff for $3,086.85, and from the judgment on that verdict this appeal was taken.

The record presents nineteen exceptions, of which eighteen relate to rulings upon questions of evidence and one to the court's disposition of the prayers. To understand the significance and effect of the rulings involved in the exceptions, some reference to the contentions of the respective parties will be helpful.

In the contract of sale the goods sold were described as "No. 2 tin standard unsweetened corn," but the record does not disclose any specifications or formula by which the "standard" referred to in the contract can be definitely determined, and in consequence much of the controversy revolved about that question. The plaintiff claimed apparently that any sound wholesome corn, free from foreign or deleterious matter, white in color, and fit for food, was "standard." The defendant, however, contended that the "standard" referred to in the contract was fixed by certain samples which it said were shown it before the contract was made, and that if the corn offered under the contract did not conform to that standard in color, consistency, and proportion of the solid to the liquid content of the cans, that it did not gratify the demands of the contract, and that they were not obliged to accept it.

The defendant claimed too that Jones was the agent of the seller, that it was bound by his statements as to the quality of corn to be furnished under the contract, and that he had stated that it would conform to the samples shown the buyer, while the plaintiff contends that Jones was not its agent, but the agent of the buyer, and that he had no power to bind it by his statements.

Finally the plaintiff claimed that the corn which it tendered conformed to its definition of the "standard" required by the contract, while the defendant contended that it did not conform to that or any proper standard, and that therefore it was justified in refusing to accept it.

In the course of the cross-examination of S. J. Van Lill, Jr., a witness for the defendant, he was asked if he had at any time sold "any or part of the corn purchased under the contract," and he answered, "We did not." He was then told that Jones had written to Roberts & Company on September

25th, 1925, that the S. J. Van Lill Company had informed him that it had sold the greater portion of the corn and was compelled to make delivery to its customers and could not therefore wait any longer for Roberts & Company to settle on arbitration, and asked whether that statement was true? The witness said be could not answer the question because he did not recall advising Jones that he had the entire car sold, but that they had been selling corn during September. In substance the same question was repeated and much the same answer given. The defendant objected to both of these questions, but the objections were overruled, and those rulings are the subject of the first and second exceptions. While the relevancy of the inquiry is scarcely perceptible, we find no reversible error in these rulings. The questions amount to no more than asking the witness if he had not made to Jones statements inconsistent with his testimony, and certainly no rule of practice is better settled than that a cross examiner may lay the foundation for impeaching a witness by asking him if he has not on some former occasions made statements inconsistent with his testimony in the pending case, if the examiner sufficiently identifies that occasion.

David H. Stevenson, vice-president of the Torsch-Summers Company, which is engaged in the canning business, a witness for the defendant, testified that that company had on February 20th, 1925, bought 3,000 cases of "No. 2 standard unsweetened corn" of the 1925 "pack" of the appellee through Thomas J. Meehan & Company, brokers, and that, under that contract, it had received in one shipment 1,500 cases. He was then asked to describe the nature of the "goods he found in those cans." An objection to that question was sustained, and defendant then offered to prove that upon examination of twelve cans taken from the consignment it was found that the corn was of an inferior quality, and that Roberts & Company, representing the Frederick City Packing Company, the seller, agreed that it was not worth a dollar a "case," that fifteen cents a dozen was taken off the price for that lot, and that an additional shipment of 2,000 cases was made by the appellee to the Torsch-Summers Company, which was all

right, and accepted. That offer was overruled, and the defendant called Thomas L. North, who trades as Thomas J. Meehan & Company, and proved by him that he had bought 5,000 cases of "No. 2 standard unsweetened corn" on February 4th, 1925, from Roberts & Company of the appellee's 1925 pack, that he was present when the twelve cans were opened, and that 1,500 cases of that order went to the Torsch-Summers Company. He was then asked what quality of corn he found in the opened cans, whether the 1,500 cases were accepted by the Torsch-Summers Company and what became of the 1,500 cases. Objections to all of these questions were sustained, and the defendant then offered to prove that the witness made an examination of the 1,500 cases shipped by appellee to the Torsch-Summers Company, by taking therefrom a "dozen or two" cans, opening and inspecting them, that "upon examining the opened cans he found the corn contained therein was not "standard unsweetened corn," but of an inferior grade, and that it contained an excessive quantity of water, particles of silk, husks, and "other objects," and that he thereupon rejected the shipment, but that his company finally took it at a reduction in price of fifteen cents per dozen, and that the balance of the corn which it had bought from appellee was of the quality specified in its contract and was accepted. That offer was also overruled, and those rulings are the subject of exceptions numbered three to five and seven to nine inclusive.

The corn referred to in this series of questions and offers was no part of the corn tendered to the appellant, but it is contended that this testimony should have been admitted because appellee had offered evidence in the case tending to show that it packed only one grade of corn, and that its entire pack was of the same quality, and appellant says that, if that is so, then the quality and grade of any part of appellee's pack would fairly indicate the quality and grade of any other part of it. Ordinarily it is not permissible to prove the existence of one fact by proving the existence of other facts, which have no necessary connection with or relation to it (22 C. J. 750), and the fact that the appellee had sold

defective or substandard corn to others, standing alone, would not be accepted as proof that it had tendered defective or substandard corn to the appellant, but would be regarded as collateral to the issue, which was, What was the quality of corn tendered appellant? But there are cases in which it is difficult to say just where the line between direct and collateral testimony lies, and there seems to be no more definite test than whether the evidence offered, under the circumstances of the particular case, fairly tends to establish or disprove the fact in issue. 22 *C. J., "Evidence,"* par. 89. For that reason it is generally held that the admissibility of evidence of acts or conditions not directly connected with the litigated fact, but offered to induce a belief in the existence or nonexistence of such fact, ordinarily rests in the sound discretion of the trial court. 22 *C. J.* 744. But this court has gone farther than that, and has held that where the fact sought to be shown, even though independent of the litigated fact, nevertheless has an actual and substantial tendency to establish or disprove such fact, it must be admitted. For, in *Webster v. Moore*, 108 Md. 572, it permitted the plaintiff, in an action on a contract for the sale of canned tomatoes, where the defendant alleged that the goods tendered were not of the quality called for by the contract, to show that he packed but one grade or quality of goods, that the work was properly done, and that tomatoes of the same pack, but not the identical tomatoes tendered the defendant, were of a certain grade and quality; and there is support for that position. In *Hodgkins v. Chappell*, 128 Mass. 201, where the issue was whether fish stored under certain conditions were thereby rendered unfit for food, evidence was admitted that other fish stored in the same place under the same conditions were not unfit for food. In *Kinston Cotton Mills v. Rocky Mount Hosiery Co.*, 154 N. C. 462, where the issue was whether certain yarn tendered by the plaintiff to the defendant was of a certain quality, evidence that other yarn made at the same place in the same way was sent to other customers and used by them without complaint was admitted in the trial court, and used as the basis for admitting evidence that other customers did

complain of the quality of the yarn; and in *Chase v. Blodgett Milling Co.,* 111 Wis. 655, an action for damages for negligently shelling pop corn, evidence that corn from the same crib, in the same condition, and raised the same year, had been shelled by other parties without damaging it, was admitted.

Applying these principles to the issue before us, we feel that this testimony should have been admitted. Samuel H. Rosenstock, president of the Frederick City Packing Company, had described in the most meticulous detail the process of manufacturing canned corn in its factory at Frederick and had stated that the corn he had offered the appellant as called for by its contract was good standard corn, and that "the whole of 1925 pack was of this kind and quality." William Thrasher of Roberts & Company had testified that he had examined samples of the corn in the rejected shipment and that it was "strictly standard corn." Rosenstock's statement, taken in connection with that evidence, amounted to the assertion that, since all corn packed by his company was of the same quality, and as the samples examined by Thrasher were "standard," that therefore all the corn tendered was standard. Upon the principle stated above, he was entitled to show that, but, having shown it, the defendant ought not to have been precluded from contradicting it by showing that other shipments from the same "pack," manufactured under the same conditions, were not standard. Nor can we say that the defendant was not injured by these rulings, for by them the learned and careful judge who tried the case excluded from his consideration facts which may have affected his conclusions as to the quality of the corn tendered by the plaintiff, especially in view of the fact that the direct testimony bearing upon that question was in hopeless and irreconcilable conflict, and that he admitted over objection evidence that no complaints as to its quality had been made by subsequent buyers of the rejected corn.

The tenth and eleventh exceptions relate to the testimony of Dr. Wyatt H. Randall, offered as an expert on the classification and quality of the corn tendered the defendant by

the plaintiff. The witness, who was by training and experience unquestionably qualified to give an opinion upon the quality of the corn, was asked whether he would regard the samples of the plaintiff's "1925 pack" as standard, and over defendant's objection he was allowed to say that he would. The witness himself had neither attempted to define the word "standard" as applied to canned corn, nor had he referred to any classification or definition by others, and there was no definition of the term in the case at all except that the goods sold defendant should conform in grade and quality to the corn canned by the plaintiff in 1924. He had said that he was not an "arbitrator of quality" and apparently knew nothing of any trade classification of corn, and his examination of canned corn had been made to ascertain its wholesomeness, and he did not profess to be able to classify it as to quality in accordance with trade usages. But the court by these questions permitted him first to create a standard of his own without disclosing the terms of it, and then to say whether the corn he examined conformed to that standard. We think that was going too far, and that there was error in these rulings.

The exclusion of a letter from Meehan & Company to Roberts & Company, which is the subject of the sixth exception, was proper, since the letter was obviously hearsay.

Nor do we think the letter from Jones to Roberts & Company which, is the subject of the twelfth exception, should have been admitted in evidence. It was written on September 25th, 1925, and the evidence fails to show that at that time Jones was acting as the appellant's agent, or that the letter was written with its knowledge or consent. It was not conceivably a part of the *res gestae,* and it had little apparent relevance, for the refusal of the appellee to submit to arbitration was not made an issue in the case.

In the course of the examination of William Thrasher, when offered in rebuttal, he said that 9250 cases of the rejected corn had been sold to Ralston & Company of New York, and he was then asked if he had received any complaint from that company as to the quality of the goods, and he said

that he had not. Appellant objected to the question, which is the subject of the thirteenth exception. The fact that Ralston & Company did not complain of the quality of the goods had no necessary connection with any issue in the case. It may have known the grade and quality before it purchased, or it may have been unwilling to incur the annoyance and expense of a controversy, so that while its failure to complain, standing alone, may have had some possible probative force, it was too remote to warrant its recognition as judicial proof, and this question should not have been allowed.

The same witness, having stated that he knew of the shipment of 5,000 cases to Meehan & Company, was asked if any part of that shipment had been rejected. An objection to that question, which is the subject of the fourteenth exception, was properly sustained, as the corn may have been rejected for reasons not connected with its quality He was then asked if the corn shipped to Meehan & Company was the "same kind of goods in grade and quality" as that sold to the Van Lill Company by his company. The court sustained an objection to that question, and that ruling is the subject of the fifteenth exception. The question was asked in re-recross examination, was not relevant to anything brought out in the direct examination of the witness at that stage of the case, and was within the sound discretion of the trial court, and, there being no evidence of any abuse of that discretion, the ruling will not be reviewed.

Walter A. Frey, called by the plaintiff in rebuttal, was asked, and over objection permitted to answer, two questions designed to show market conditions in the canned corn trade in 1924 and 1925. The witness was qualified to speak on the subject, and while the condition of the market in 1924 had little apparent connection with the case, its condition in 1925 was relevant, and we find no harmful error in either of these rulings, which are the subject of the sixteenth and seventeenth exceptions.

The eighteenth exception relates to the admission in evidence of several depositions containing statements that deponents had bought and sold part of appellee's 1925 "pack"

of unsweetened corn, and had actually examined the corn they bought and had found it to be of "standard grade." Deponents also said that they had sold the corn they had so bought and had received no complaints about it. After these depositions had been read in evidence, appellant objected to them. Not only did the objection come too late, but as that part of the evidence which related to the actual examination of the corn was admissible, the objection, which amounted to a motion to strike out all the evidence, was properly refused, although that part of it which referred to the absence of complaints was irrelevant and, upon timely objection, would have been excluded. The nineteenth exception relates to the court's rulings on the prayers. The plaintiff offered one prayer covering the measure of damages, which was granted, and the defendant seven, of which the second, third, fourth, and seventh were granted, and the others refused. The plaintiff's prayer correctly stated the rule as to the damages recoverable in an action of this character, and if the plaintiff was entitled to recover at all was properly granted.

While not specifically abandoned, appellant did not in this court press its objection to the refusal of its demurrer prayer, and, without referring to it in detail, it is sufficient to say that after a careful examination of all the evidence in the case we entirely concur in that ruling.

The defendant's fourth prayer, which was granted, should properly have been refused, and its fifth prayer, which was refused, should have been granted; but the appellant was not injured, but on the contrary was benefited, by the error, because while its fourth prayer, which was granted, instructed the court sitting as a jury that, if it found that a can of corn from appellee's 1924 "pack," offered in evidence, represented the quality of corn which appellee agreed to sell to the appellant, and that a can of corn from appellee's 1925 "pack" represented the quality of corn actually tendered, the verdict should be for the defendant, its fifth prayer only permitted such a finding if the court sitting as a jury found that the quality of the contents of the last

mentioned can was inferior to that of the first mentioned can. The fourth prayer was objectionable because it assumed as a matter of law that the content of the can from the 1925 "pack" was inferior to the content of the can of the 1924 "pack," while the fifth prayer left that question to the court sitting as a jury, but, as we have said, that error did not hurt the appellant.

The defendant's sixth prayer stated that if the court, sitting as a jury, found that appellee was engaged in the canning business, and employed Roberts & Company as its selling agent to dispose of its 1925 "pack" of canned corn, and had so employed it for "its previous packs for at least thirty years," and that Roberts & Company was one of the largest canned goods brokerage concerns in the United States, that the plaintiff "was" presumed to know that "the said Thomas Roberts & Co., Inc., would be required to engage the services of other agents, brokers or employees to assist it in marketing and disposing of the plaintiff's 1925 pack of corn and thereby impliedly authorized said Thomas Roberts and Co., Inc., so to do; and if the court, sitting as a jury, shall further find that the said Thomas Roberts & Co., Inc., employed one Howard E. Jones, trading as Howard E. Jones & Co., to assist in marketing and disposing of the plaintiff's 1925 pack of corn, and that the negotiations which resulted in the execution of the contract dated February 9, 1925, and offered in evidence, were conducted, carried on and concluded by said Howard E. Jones, and that said Howard E. Jones, during the course of said negotiations, made representations to the defendant respecting the quality of the corn sold under said contract, then such representations were and are the representations of the plaintiff in this case." The plaintiff specially excepted to that prayer on various grounds, but while these exceptions were sustained by the court, in the view we take of this prayer it becomes unnecessary to discuss them. The only possible theory upon which it could have been based was that Jones was the agent of the appellee, but there is not the slightest evidence of that fact to be found in the record unless, as the

appellant contends, it is to be inferred from the fact that
Roberts & Company carried on so large a business that the
appellee was "presumed to know" that it would of necessity
be required to employ subagents to dispose of its product,
and that the subagents thus employed would become the
agents of the appellee and authorized to bind it by any
representations they might assume to make in selling its
goods, and that its agent, Roberts & Company, employed
Jones as a subagent to sell the 10,000 cases to the appellant.
But it is obvious that no such inference is permissible in
this case. First, there is no evidence found in the record
legally sufficient to show that the facts upon which it is
predicated exist, to wit, that Roberts & Company was obliged
to employ subagents to sell appellant's product, or that it
ever employed Jones for that purpose. Second, there are
no facts in this case to take it out of the general rule that
an agent, unless or by fair implication authorized by his
principal, cannot delegate his authority to a subagent. "An
agent, generally, has no implied authority either to put a
substitute in his place or to employ assistants on his prin-
cipal's account." *Groscup v. Downey,* 105 Md. 277; *Carroll
v. Manganese Safe Co.,* 111 Md. 256; *Mechem on Agency,*
par. 306, and that rule applies to brokers as well as to any
other agents, *Ibid,* par. 2399. And while there are well
recognized exceptions to it, as for example, where the nature
of the employment necessarily involves the appointment of
subagents, or where the right to appoint them is established
by some custom or usage, or the appointment is required in
some sudden emergency, as has been stated, there is nothing
whatever to be found in the record in this case to bring it
within any recognized exception to the general rule. Third,
the mere fact that Roberts & Company carried on a large
business could not as a matter of law charge the appellee
with notice that it was obliged to employ others to do the
work which it undertook to do, but on the contrary it would
rather warrant the belief that it was adequately equipped
to faithfully discharge such obligations as it assumed, and

that when it was employed to execute some trust, it would not delegate that duty to other persons wholly unknown to its principal. And finally there was no suggestion of agency in the transactions between Roberts & Company and Jones. Jones offered to buy certain canned good from Roberts & Company, and that company agreed to sell them to him. It understood that Jones was probably buying them to sell again, but that fact had no significance, for, although it was unwilling to ship the goods to Jones on his credit, or to any buyer to whom he sold them until the name of such buyer was approved by it, nevertheless, under Roberts & Company's letter, and Jones' memorandum of January 23rd, 1925, Jones apparently intended to buy the goods and expected Roberts & Company to deliver them to him, if and when he paid for them, and, if that was so, Jones' subsequent act in directing that the name of the Van Lill Company be inserted as the buyers of the 10,000 cases "booked" for him could not possibly have converted him from a possible buyer into an agent of the Frederick City Packing Company. For these reasons the prayer was properly refused, and we find no error in the rulings involved in the nineteenth exception.

But for the errors involved in the rulings on questions of evidence to which we have referred, it will be necessary to reverse the judgment appealed from, and remand the case for a new trial.

*Judgment reversed with costs, and new trial awarded.*

PARKE, J., dissents.