BARNES, Etc., et al. *v.* HOUSING AUTHORITY OF BALTIMORE CITY

[No. 192, September Term, 1962.]

148

*Decided March 20, 1963.*

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT, HORNEY and MARBURY, JJ.

*Leonard S. Bernstein* for the appellants.

*Thomas G. Andrew,* with whom were *Rollins, Smalkin, Weston & Andrew* on the brief, for the appellee.

MARBURY, J., delivered the opinion of the Court.

The appellants have appealed from a judgment entered upon a directed verdict for appellee at the close of the plaintiffs' case in the Superior Court of Baltimore City.

The infant appellant, Maurice Barnes, three years old at the time of the accident involved, lived with his parents in the Frederick Douglas Homes, a housing project which has been owned and operated by the Housing Authority of Baltimore City since its construction in 1941. The child's parents had lived in the apartment in which they lived at the time of the accident for eleven years, and had lived in the Douglas Homes for a total of twenty years.

On May 31, 1959, the child had gone with an older brother

to a playground nearest to the building in which he resided with his parents. While returning alone from the playground, which is on the Douglas Homes property, he fell into a concrete window well or pit which was used by maintenance employees to gain access to a door leading to a crawl space under the building in which he lived.

This well was thirty-seven and one-half inches deep, four feet wide, extended two feet from the side of the building and had a ridge or coaming five and three-quarter inches wide and approximately four inches above the level of the ground. About eighteen inches from the well, and thus about three and one-half feet from the building, was a paved walkway leading to a trash can area, parking areas, and the playground. This walkway was of concrete, four feet wide. On the side away from the building, there was a wire fence along the walkway. On the side next to the well there was no protection of any kind. There was undisputed testimony that the well in question had been without any type of cover since it was originally constructed.

This action in tort was filed by the father of the child on behalf of the child and for himself to recover damages for injuries sustained in the fall.

On this appeal, appellants challenge the ruling of the court below in not allowing certain testimony into evidence and in withdrawing the case from the jury.

The evidence that appellants sought to introduce and which was not admitted by Judge Prendergast was of two categories: (1) condition of other access wells on the grounds of the apartment house project, and (2) evidence of subsequent improving of the pathway involved.

As to (1), appellants, by means of photographs, testimony, and answers to interrogatories, attempted to show that appellee used covers on all other concrete access wells in the development. The judge below refused to admit this evidence. We find the court below correct in this ruling. There was no evidence to show that the specific reason for covers on the other wells was to prevent injuries. The relevancy of evidence of collateral facts as to similar conditions was involved in

*Ottenberg v. Ryan & Riley Co.,* 130 Md. 38, 99 Atl. 984. In that case, in an action for damages to the plaintiff's house due to the alleged negligent construction of a sewer, this Court held that a question asked a witness as to the condition of houses immediately next to plaintiff's on the same fill should not be allowed, as there might have been causes for their condition which did not apply to plaintiff's house. In *Van Lill Co. v. Frederick City Packing Co.,* 155 Md. 303, 141 Atl. 898, an action brought against the defendant because of its refusal to accept canned corn sold to it, evidence that part of the rejected corn had also been rejected by a subsequent purchaser was inadmissible since it might have been rejected for reasons not connected with its quality. To the same effect, see *Davison Chemical Co. v. Baugh Chemical Co.,* 134 Md. 24, 106 Atl. 269. The reasons why some of these concrete access wells were covered may have had nothing to do with safety whatsoever, and may have been due to many other reasons.

As to (2), the refusal of the trial judge to admit evidence by photographs showing that subsequent to the accident appellee paved the unpaved section next to the walkway, which included the area in which the infant appellant must have been when he fell into the well, the purpose of such evidence was to show that the child had a right to be where he was. The effect of the admission of the photographs would also have shown that a cover had been installed over the well. Such evidence would have been immaterial, because this action by the appellee could not affect its liability at the time of the accident. *State v. Prince George's County,* 207 Md. 91, 113 A. 2d 397, and cases cited therein. See also *Stewart & Co. v. Harman,* 108 Md. 446, 449, 70 Atl. 333.

Appellants' major contention is that Judge Prendergast erred in granting appellee's motion for a directed verdict at the conclusion of appellants' testimony. The main thrust of their argument is that the dirt section adjacent to the access well and between it and the paved walkway was part of the path used by pedestrians passing along that area, and that the appellee had a duty to maintain it in a safe condition.

There is no showing or suggestion that the paved walkway

was either unsafe or inadequate, and there was no invitation by the landlord, express or implied, to the tenants or their children to use any area adjacent to the walkway as a substitute for it. Therefore, when the child left the paved way he ceased to be an invitee. *Landay v. Cohn,* 220 Md. 24, 150 A. 2d 739; *Levine v. Miller,* 218 Md. 74, 145 A. 2d 418.

Where it is manifest to the court that, on the plaintiff's own showing and the uncontradicted evidence in the case, there is no rational ground on which a verdict for the plaintiff can be based, the court has the duty, on a proper motion by the defendant, to direct a verdict for him. *Jones v. Baltimore Transit Co.,* 211 Md. 423, 127 A. 2d 649. Was there no rational ground on which a verdict for appellants could be based? The law of landlord and tenant in Maryland is quite clear on the point that the landlord is not liable to the tenant for obvious defects existing at the time of the lease. *Sherwood Brothers, Inc. v. Eckard,* 204 Md. 485, 105 A. 2d 207.

But there is a stronger reason for finding the trial court to be correct. The case of *Jones v. City of Aberdeen,*[1] 138 F. Supp. 727, affirmed in 241 F. 2d 26, appears analogous to this case. There, a twenty-three month old child wandered out of a playground in a federally owned housing project onto the tracks of a railroad adjacent to the project and suffered the loss of both legs when run over by a passing train. In a typically thorough, well reasoned opinion, the late Judge Chesnut held that the United States was not liable. Applying the Maryland law of landlord and tenant, he found that the proximity of the project and the railroad was apparent to the parents of the infant plaintiff when they rented their house. As to the crossing of the unimproved land by the child in going to the railroad tracks (which would be analogous to the infant in the instant case not using the paved walkway, but in traversing the unpaved section) Judge Chesnut stated in 138 F. Supp. at page 731:

---

1. The City of Aberdeen and the United States of America were defendants in the original pleadings, but the suit as to the City was dismissed, and the opinion dealt with the claim against the United States under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671 et seq.

"As to such adjoining property the user may be in the status of a trespasser or licensee or an invitee. Here, in my opinion, the tenants who made any use of the open field between the project and the railroad had the status at best of only licensees. As to the licensee the Maryland law is clearly established that the owner is not responsible for accidents happening to a licensee other than those caused by hidden or secret dangers or pitfalls which were known or ought reasonably to have been known to the owner and as to which no warnings were given to the user."

He went on to say that the landlord owed no more duty to minor children than to the tenants themselves.

Since there was no violation of any duty owed the tenants or the child, Code (1957), Art. 75, § 2 (which provides that the negligence of a parent shall not be imputed to the infant), relied on by the appellants, is not applicable. We do not feel that this relieves parents of children of tender years from all supervision over such children while at play, assuming the window well in this case constituted a dangerous condition.

Under the authorities of the above cited cases, which clearly state the law on this subject, we must affirm the action of the lower court in granting appellee's motion for a directed verdict and entering judgment in its favor.

*Judgment affirmed, with costs.*