GEORGE HARAKAS, BY NEXT FRIEND, APPELLANT, v. EMMETT E. DICKIE ET AL., RESPONDENTS.*

Kansas City Court of Appeals.   December 2, 1929.

*Corpus Juris-Cyc. References: Landlord and Tenant, 36CJ, section 897, p. 217, n. 9; section 913, p. 224, n. 13; section 916, p. 227, n. 37; section 956, p. 243, n. 90; Negligence, 45CJ, section 182, p, 778, n. 40.

172

*Charles N. Sadler* for appellant.

*McCune, Caldwell & Downing* for respondent.

ARNOLD, J.—Action by George Harakas, a minor, by Pete Harakas, his father and next friend, to recover damages for personal injuries. At the close of plaintiff's evidence the court instructed the jury to return a verdict for defendants, whereupon plaintiff took an involuntary nonsuit, with leave to move to set the same aside. Plaintiff appealed from the order and judgment of the court overruling his motion to set aside the involuntary nonsuit.

The scene of the accident in question was large apartment building at the southwest corner of Sixteenth Street and The Paseo in Kansas City, Missouri. Although physically connected, the entire building was comprised of a number of distinct units or apartments, each unit being three stories in height. Each unit had a separate front entrance. Some four or five units faced north on Sixteenth Street between the Paseo and an alley to the west thereof, while the others faced upon the Paseo. At the rear of each unit was a common stairway to serve the three apartments of such unit and porches at each floor thereof, with railings enclosing the porches and stairway. The rear building line of the apartment was not uniform. The rear of the apartment unit abutting the alley on Sixteenth Street and the rear porches thereof (upon which the plaintiff was injured) extended some twenty to forty feet south of the rear of the other apartment units and porches on Sixteenth Street (in one of which plaintiff and his family resided). The apartment in which plaintiff lived had no connection with, nor access to, the porches upon which he claims he was injured. Plaintiff and his family lived in the fourth apartment from the alley. Steps lead up from the ground to approximately three feet from the center of the porch on the first floor. From there steps lead westward up approximately six feet to a landing between the first and second floors. A "U" turn is then made and steps placed against the building itself lead eastward and upward approximately five and one-half or six feet to the floor of the porch on the second floor. The porches are enclosed with a wooden railing consisting of a two by four inch top rail, and a one by four inch bottom rail, each fastened to vertical uprights. At the second floor the timbers forming the railing about the porch are carried west and north

apparently for symmetry and architectural effect to enclose the stairway well. These timbers were not so placed for any protective purpose, as they could not be used, brushed against or touched by anyone using the stairs or porches for any ordinary or contemplated use.

The testimony of plaintiff discloses that he and his family had moved into one of the interior apartments on November 3, 1924,—five days before the accident in question occurred. On November. 8, 1924, the seven-year-old sister and the three-year-old brother of plaintiff finished their supper and went out back of the apartment building to play with the Pares children who lived in one of the apartments. The two Pares boys and the brother of appellant went up the stairs to the second floor of the apartment in question to borrow a basket ball belonging to a boy living there. When next noticed, the three-year-old brother of plaintiff was lying lengthwise upon a railing across the west side of the stairway enclosure and was crying. This railing was a continuation of the next to the top railing about the porch on the second floor and was approximately seven or eight feet above the landing between the first and second floors. It could not be reached or touched by plaintiff and his brother from any part of the porches or stairs or from the landing between the first and second floors. No one else testified to seeing the boy get upon the railing where his sister noticed him, and the only way he could have gotten there was by going to the second floor, then crawling westward along the railing to the corner post and then northward along the continuation of this railing. When the sister noticed him, she called to his twelve-year-old brother who was just coming out of the back door of their apartment. He ran up the steps to the first landing and climbed up the corner post to reach the place where his brother was lying. As he had his right arm about the top rail and was attempting to push his little brother inside, the top rail gave way and plaintiff fell to the alley below. The railing which gave way was eight feet above the landing between the first and second floors and could not be reached or touched by anyone using the porch or stairs in the usual and customary manner. It was not there for any protective purpose for people using the stairs, landings and porches.

Over defendants' objection, plaintiff was permitted to introduce testimony to the effect that the general condition of the porches, steps and railings was old and defective and that the railings were rotted, weak and shaky. Also that children frequently had been seen climbing up and down the steps, corner posts and railings, banisters, coal sheds in the rear and "all around everywhere."

Plaintiff's first contention is that it was the duty of defendants, as landlords, to keep the porches and railings which were used in common by the tenants of the apartment, in a reasonably safe condition of repair for the use of such tenants and other persons as

might use the porches and railings for any legitimate or lawful purpose.

The evidence shows that the porch from which plaintiff fell was not used in common by all tenants of the entire building. However, it is shown that the apartment building, although one structure, consisted of units, each unit being three stories high, and the porch in question served one of these units, and was used in common by all of the tenants occupying such unit. As the porch was so used by all tenants occupying the unit of the apartment which the porch served, it was under the control of defendants, whether such control was evidenced by express reservation or implied from such common use. [Miller v. Gesser, 193 Mo. App. 1, 19-20.] Other authorities might be cited, but the law as above announced is so well settled that we will not lengthen this opinion by citation or discussion of other cases. The porches being under the control of defendants, it was their duty to exercise reasonable care to keep them reasonably safe for the use of tenants and other persons for the purposes for which they were intended.

The next questions presented in the determination of appellant's contentions are, (1) Did appellant's brother, not living in this unit of the apartment building, have a lawful right to use the porch, and (2) If so, was he using it for a purpose or in a manner which the landlord actually or impliedly intended it to be used? The evidence shows plaintiff's brother and sister went to the back yard of the apartment for the purpose of playing with the Pares children who lived in one of the apartments. The two Pares boys and plaintiff's brother went up the stairs to the second floor of the porch for the purpose of borrowing a basket ball which belonged to another boy living in one of the apartments on the second floor. This was a legitimate use of the porch stairs. Plaintiff's brother had a lawful right to use the porch and stairs for the purpose of going to the neighbor boy's apartment to borrow a ball or for any other legitimate purpose. In other words, plaintiff's brother had a right to use the porch and stairs in order to reach his neighbor boy's home for any lawful purpose, and while so using them, the landlords owed him the same duty they owed the tenants of the building with respect to the condition of the porch and stairs. [Hunter v. Schugart, 267 S. W. 411; Herdt v. Koening, 137 Mo. App. 589, 119 S. W. 56.] This being true, if the perilous position of the boy had arisen while he was using the porch and stairs for the purpose aforesaid, and while using due care, and if plaintiff in the exercise of due care had been injured in attempting to rescue his little brother from such perilous position, on account of the negligent failure of defendant to keep the porch and stairs in a reasonably safe condition, then defendants would be liable. [Donohue v. Wabash Ry. Co., 83 Mo. 860.] In other words, de-

fendants are not liable for plaintiff's injuries unless they were guilty of negligence with respect to the boy before plaintiff attempted to rescue him, or were guilty of negligence toward the boy or plaintiff after the attempt to rescue had commenced. [Donohue v. Wabash Ry., supra.]

Keeping the above principles in mind, the next question is whether or not defendants were guilty of negligence with respect to the boy before, or with respect to the boy or appellant after the latter's efforts to rescue the boy commenced.

The boy ascended the stairs to the second floor in safety. When next seen he was lying lengthwise upon a cross-piece or railing which extended north and south along the west side of the stair well. This railing was seven or eight feet above the landing between the first and second floor, and could not be reached or touched by any one from any part of the porch floor or stairs, or from the landing between the first and second floors. The porch floor was east of the stair well which was at the west end of the porch. The porch and stair well are enclosed with a continuous fence or railing consisting of a two by four inch top rail and two one by four inch rails, all fastened to posts or vertical uprights of the porch. The porch extends east and west along the rear of the building. Plaintiff's brother was found lying on the top railing which extends north and south along the west end of the stair well or porch. The only way he could have reached this place from the second floor of the porch was to crawl westward along the railing to the corner of the porch, then north on said railing toward the house. This railing was a continuous one, enclosing both the porch floor and the well containing the stairway.

Neither the perilous position of the boy nor the injuries plaintiff received while attempting to rescue him, were caused or brought about by any legitimate use of the porch, stairs, or railing which defendants should have contemplated. The boy had a lawful right to use the porch and stairs in order to reach the apartment on the second floor, but when he left the second floor of the porch and started to climb to the west side of the stair well on the railing which enclosed such well, he became a trespasser and was at a place where he had no right, invitation or license to be. If he had used the porch and stairs for the purpose for which they were intended, he would not have been in a perilous position and plaintiff would not have been injured. Being a trespasser, defendants owed him no duty.

A kindred question was before our Supreme Court in Kelly v. Benas, 217 Mo. 1, 116 S. W. 557. In that case plaintiffs sued for the death of their infant son, Michael, nine years of age, caused by a pile of lumber falling upon him. At the close of plaintiffs' evidence, the court directed the jury to find for defendants, and

plaintiff took a nonsuit with leave. The charging part of the petition in that case was as follows:

"That defendants were the owners, occupants and proprietors of certain premises . . . and the lumber and lumber yard thereon; that said premises opened on said street and on a public alley, were unfenced and unguarded, and that children in large numbers played on the premises, all of which defendants well knew; that such open lumber yard was an attraction for children to play on said premises at and about where the lumber was piled, as defendants well knew; that children in large numbers were attracted to play at and about the piles of lumber upon said premises and were endangered, if such lumber be negligently piled, all of which defendants well knew before Michael was killed; that defendants negligently piled lumber in their yard so loosely, insecurely and without any fastenings that said lumber fell upon Michael and injured him so that he died; that on said date defendants had piled and were maintaining a pile of lumber in said yard in such manner that long pieces of lumber and timber were laid on top of shorter pieces, to a great height; that thereby said pile was made top-heavy and liable to fall; that said pile was built without braces or cleats to secure it from falling and was without fastenings of any kind to prevent its falling; that a pile so piled was dangerous to persons near the lumber, because liable to fall and injure them; that it was especially dangerous to children attracted by said premises to be and play near said pile, as defendants well knew at all said times, notwithstanding which defendants so negligently piled and maintained said lumber pile in such dangerous and defective condition that on said date Michael was attracted to said premises to be and play thereon near said dangerous pile of lumber, when by reason of its defective condition it gave way and the lumber falling upon Michael fractured his skull and otherwise so broke his bones and crushed him that he died two days later."

In the course of the opinion, the court quoted approvingly from Hargreaves v. Deacon, 25 Mich. l. c. 5, the following:

"We have found no support for any rule which would protect those who go where they are not invited, but merely with express or tacit permission, from curiosity or motives of private convenience, in no way connected with business or other relations with the occupant. . . . A person incurs no duty towards persons by not warning or driving them from his premises, and they go there, if mere volunteers, and without invitation, at their own risk."

In disposing of the case, LAMM, J., says, at pages 9 and 14:

"One applicable general rule of law is that there must be a duty raised by the law and breached by defendant before an action for negligence lies. Another is that the landowner or occupant owes no duty to trespassers or volunteers going upon his land for their

own purpose, to maintain it in any particular condition for their benefit. [Sweeny v. Railroad, 10 Allen (Mass.) l. c. 372; Straub v. Soderer, 53 Mo. 38.] Volunteers, bare licensees and trespassers take the premises for better or for worse, as they find them, assuming the risk of injury from their condition, the owner being liable only for concealed spring guns, or other hidden traps intentionally put out to injure them. To invitees, however, he owes the active duty to exercise reasonable care for their safety."

"Michael was a trespasser. Defendants did not intentionally injure him. They set no trap for him. Their lumber piles were not an attractive nuisance as defined in the turntable cases. Their yard was not used by children by their invitation, express or implied, as a playground, even though their watchman did not always drive children away, and though, on this Sunday evening, he was off duty for a spell. We think the court ruled correctly."

In the instant case, it is true that plaintiff's brother was lawfully on the premises and had a right to use the porch and stairs in going to the apartment on the second floor; but when he left the floor and crawled out on the railing where he was found, he was not using the porch for any legitimate purpose, was trespassing on property where he had not been invited, and for these reasons was a trespasser. In this situation defendants owed him no duty except not to wantonly or purposely injure him. As defendants owed the boy no duty, they were not liable for the injuries suffered by plaintiff in attempting to rescue him, unless such injuries were caused by the negligence of defendants respecting plaintiff or the boy after plaintiff's efforts at rescue began, and of such latter facts, there is no evidence. This conclusion disposes of plaintiff's contention that defendants are liable because their agent knew that boys living in the apartment frequently climbed on the porches and railings.

Defendants contend in their brief that plaintiff pleads and attempts to make a case under the turntable or attractive nuisance doctrine. Replying to this contention, appellant says in his brief: "We do not understand that the petition pleads the turntable or attractive nuisance doctrine, or that plaintiff attempted to make a case under that doctrine." As appellant does not present the case on that theory, it is not necessary for us to determine whether or not a case was made under that doctrine. However, we will say that the facts do not bring the case within that doctrine. The Supreme Court has refused to extend the "attractive nuisance doctrine" beyond the turntable cases. [State ex rel. v. Trimble, 315 Mo. 32, 40, 285 S. W. 455, and cases cited.]

Plaintiff contends that defendants should have anticipated that boys were liable to climb the porches or railings. Williams v. Springfield Gas & E. Co., 202 S. W. 1, 274 Mo. 1, and Beckwith v.

City of Malden, 253 S. W. 16, are cited in support of this contention. In both these cases it is shown that a child climbed a tree and was injured by contact with an electric wire. In both cases the court held the defendant was bound to anticipate the presence of children in trees. But there is nothing in these cases suggesting that had the children been injured by reason of some defect in the trees, the owners thereof would have been liable. In the case at bar the facts show the owners of the building did not maintain any dangerous agency, such as electricity, upon the premises in a place where children might frequent. The charge here is in reference to something not actively or inherently dangerous, but merely is directed to an omission, to-wit, a neglect to repair an ordinary building, where no duty to repair was present. We see nothing in common between this case and the cases called to our attention by plaintiff. Cases cited by appellant are: Hunter v. Schugart, 267 S. W. 411; Karp v. Barton, 144 S. W. 1111, 164 Mo. App. 389; Miller v. Geeser, 180 S. W. 3, 193 Mo. App. 1; Collins v. Tootle, Est., 137 S. W. 273, 156 Mo. App. 221; Roman v. King, 233 S. W. 161, 289 Mo. 641; Dalton v. McGuire, etc., Co., 221 S. W. 443; Osborne v. Wells, 249 S. W. 705; Turner v. Rogan, 229 S. W. 809; Herdt v. Koenig, 119 S. W. 56, 137 Mo. App. 589, in support of his contention that he is entitled to recover on the facts shown. We will not review these cases in detail. Their facts clearly distinguish them from the instant case. On examination of the cases cited, we find the injured party in each case was not a trespasser but was where he had a lawful right to be at the time of the injury. The facts presented in the case at bar clearly show that plaintiff's brother was a trespasser and was not where he had a right to be. For this reason the cases cited are not in point.

We are convinced that the facts shown did not make a case for the jury under any possible theory. For this reason the action of the court in directing a verdict was proper. This conclusion renders it unnecessary for us to determine respondents' contention that the evidence does not show that defendants owned, leased or operated the apartment building in question.

The judgment is affirmed. *Bland, J.,* concurs; *Trimble, P. J.,* absent.