# MACKE LAUNDRY SERVICE CO. OF MARYLAND ET AL. *v.* WEBER, AN INFANT ET AL.

[No. 88, September Term, 1972.]

*Decided December 18, 1972.*

The cause was argued before BARNES, MCWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ., and CHARLES E. MOYLAN, JR., Associate Judge of the Court of Special Appeals, specially assigned.

*Hugh E. Donovan,* with whom were *Donahue & Ehrmantraut* on the brief, for appellants.

*David B. Lamb* for appellees.

SINGLEY, J., delivered the opinion of the Court.

Daniel Bruce Weber, Jr. (Bruce) who brought suit by his mother and next friend, Karen B. Weber, was about three and a half years of age on 19 November 1968. On that day, Bruce wandered alone into the laundry room of the apartment building managed by Carl M. Freeman Associates, Inc. (Freeman) at 7909 Kreeger Drive, Adelphi, Maryland, where he lived with his parents, and was severely injured when in an attempt to stop a clothes dryer he placed his left hand in the drive mechanism on

the back of the dryer. The dryer was owned by Macke Laundry Service Co. of Maryland and serviced by Macke Laundry Service Co. of D. C. (Macke). A judgment of $8,000.00 was entered on a jury verdict in Bruce's favor, and a judgment of $1,000.00, in Mrs. Weber's favor, each of them against Freeman and the two Macke companies. Thereafter, a judgment of $9,000.00 was entered on Freeman's crossclaim against the two Macke companies.[1] This appeal was brought by the two Macke companies from the judgments in favor of Bruce and his mother.

Nothing is more certain than that we have consistently declined to adopt the doctrine of attractive nuisance in cases involving children who are licensees or trespassers, *Osterman v. Peters,* 260 Md. 313, 314, 272 A. 2d 21 (1971); *Hensley v. Henkels & McCoy, Inc.,* 258 Md. 397, 411-12, 265 A. 2d 897 (1970); *Mondshour v. Moore,* 256 Md. 617, 621-23, 261 A. 2d 482 (1970); *Hicks v. Hitaffer,* 256 Md. 659, 661, 666, 669-70, 261 A. 2d 769 (1970); *State v. Fidelity Warehouse Co.,* 176 Md. 341, 348-50, 4 A. 2d 739 (1939), nor have we been willing to accept the more modern version of the doctrine formulated by Restatement (Second), *Torts* § 339, at 197 (1965), *Herring v. Christensen,* 252 Md. 240, 241, 249 A. 2d 718 (1969).

Our rule is that a landowner is obliged to accord to a trespasser, even one of tender years, a duty which does not transcend the obligation to abstain from willful or wanton misconduct and entrapment, *Fopma v. Bd. of County Comm'rs,* 254 Md. 232, 234, 254 A. 2d 351 (1969); *Herring v. Christensen, supra,* 252 Md. at 241; *Barnes v. Housing Authority,* 231 Md. 147, 153, 189 A. 2d 100 (1963); *Levine v. Miller,* 218 Md. 74, 79, 145 A. 2d 418 (1958).

A bare licensee, like a trespasser, takes the property as he finds it and is owed no duty greater than that owed

---

1. The agreement between Macke's corporate predecessor and Freeman contained an indemnification provision which, by stipulation of the parties, was considered by the court after the jury returned its verdict.

the trespasser, *Crown Cork & Seal Co. v. Kane,* 213 Md. 152, 157, 131 A. 2d 470 (1957). An invitee, however, occupies a different status. As Judge Digges, speaking for the Court in *Bramble v. Thompson,* 264 Md. 518, 521, 287 A. 2d 265 (1972) observed:

> "The liability of owners of real or personal property to an individual injured on their property is dependent on the standard of care owed to the individual and that in turn is contingent upon a determination of the individual's status while on the property, *i.e.,* whether he is an invitee, licensee, or trespasser. An invitee is one invited or permitted to enter or remain on another's property for purposes connected with or related to the owner's business. The owner must use reasonable and ordinary care to keep his premises safe for the invitee and to protect the invitee from injury caused by an unreasonable risk which the invitee, by exercising ordinary care for his own safety, will not discover."

There is substantial authority for the proposition that when a landlord sets aside areas for the use of his tenants in common, he owes the duty of reasonable and ordinary care to keep the premises safe for his invitees. The Court, speaking through Judge Hammond, articulated the rule in *Landay v. Cohn,* 220 Md. 24, 150 A. 2d 739 (1959):

> "Where a landlord leases separate portions of a property to different tenants and reserves under his control halls, stairways or other parts of the property for use in common by all the tenants, he must use ordinary care and diligence to maintain the retained parts in reasonably safe condition. *Seaman v. State,* 213 Md. 359, 366 [131 A. 2d 871 (1957)]; *McKenzie v. Egge,* 207 Md. 1, 7 [113 A. 2d 95 (1955)]; *Ross v. Belzer,* 199 Md. 187, 190 [85 A. 2d 799 (1952)]; *Levine v. Miller,* 218 Md. 74, 78 [145 A. 2d 418 (1958)].

The duty stems from the responsibility engendered in the landlord by his having extended an invitation, express or implied, to use the portions of the property retained by him. *Crown Cork & Seal Co. v. Kane,* 213 Md. 152 [131 A. 2d 470 (1957)] ; 32 Am. Jur. *Landlord & Tenant* § 688, p. 563; 52 C.J.S. *Landlord & Tenant* § 417 (b), p. 26; Prosser, *Torts,* 2nd Ed., § 80, p. 471. Such an invitation extended to a tenant includes the members of his family, his guests, his invitees and others on the land in the right of the tenant. Restatement, *Torts,* Sec. 360, Comment (d) ; Prosser, *op. cit.,* § 80, p. 471. It has been held that a child on the land at the invitation of the child of the tenant is entitled to the benefit of the landlord's obligation in this respect. *Harakas v. Dickie* (Mo.), 23 S.W.2d 651; *Couglin v. Jones,* 295 N.Y.S. 681, aff'd 6 N.Y.S.2d 363. See also *Mercier v. Bushwick Sav. Bank,* 24 N.Y.S.2d 666; and Annot., 26 A.L.R.2d 468, 477. There is an important qualification to the rule as to the duty of the landlord. His responsibility for the reasonably safe condition of premises retained under his control is limited to the confines of his invitation to use them, express or implied. It does not extend to the use of such premises for an unintended purpose. *Levine v. Miller, supra,* 218 Md. 74, 78-79; Restatement, *Torts,* Sec. 360, comment (d) ; Prosser, *op. cit.,* § 80, p. 473; 32 Am. Jur. *Landlord & Tenant* § 690; 52 C.J.S. *Landlord & Tenant* § 417 (b) ; *Markussen v. Mengedoht* (Neb.), 272 N. W. 241, 243, and cases cited therein; *Ryerson v. Bathgate* (N. J.), 51 A. 708, 709; *Seaman v. Henriques* (Conn.), 95 A. 2d 701, 703; *Cohen v. Davies* (Mass.), 25 N.E.2d 223; *Wholey v. Kane,* 44 N.Y.S. 649." 220 Md. at 27-28.

To the same effect are *Arshack v. Carl M. Freeman Associates,* 260 Md. 269, 274, 272 A. 2d 30 (1971) ; *Windsor*

v. *Goldscheider,* 248 Md. 220, 222, 236 A. 2d 16 (1967) ; *Elmar Gardens, Inc. v. Odell,* 227 Md. 454, 457, 177 A. 2d 263 (1962).

Our decisions have consistently held a landlord liable for improper maintenance of facilities or for failure to remedy defects in equipment over which he retains control and furnishes for common use by his tenants, *2310 Madison Ave., Inc. v. Allied Bedding Mfg. Co., Inc.,* 209 Md. 399, 408-09, 121 A. 2d 203 (1956) ; *Com. Realty Co. v. Nat'l Distillers Products Corp.,* 196 Md. 274, 279, 76 A. 2d 155 (1950) ; *Kinnier v. Adams, Inc.,* 142 Md. 305, 307-08, 120 A. 838 (1923) ; Prosser, *The Law of Torts* § 63, at 408 (4th ed. 1971) ; Annot., *Landlord's Liability for Personal Injury or Death Due to Defects in Appliances Supplied for Use of Different Tenants,* 25 A.L.R.2d 576 (1952).

In *Barnes v. Housing Authority, supra,* a three-year-old child was injured when he fell into an unguarded window well located at a housing project where the child lived with his parents. We affirmed the entry of a directed verdict at the conclusion of the plaintiff's case, because there was no showing that a paved walkway 18 inches from the window well was unsafe, nor was there any showing of an invitation by the landlord to tenants or their children to use any area adjacent to the walkway as a substitute for it. In consequence, when the child left the walkway, he ceased to be an invitee.

*Levine v. Miller, supra,* rested upon a similar distinction. There, the 10-year-old plaintiff was permitted to use a recreation room in one of a group of apartment buildings where she lived with her parents as a day camp for smaller children, provided that she signed for the key (the room was customarily locked), locked the room when she had finished using it, and returned the key to the office. On the day when she was injured by a falling radiator in the room, she had left a door open on leaving the room and six hours later had returned to the room alone after the permitted use had ceased. We affirmed the granting of a directed verdict for the landlord, be-

cause we concluded that when the plaintiff departed from the conditions imposed by the landlord, she lost her status as an invitee and became a mere licensee to whom the landlord owed no duty other than to avoid willful injury or entrapment.

Such a change in status may be chronological, as it was in *Levine,* or geographical, as it was in *Barnes, supra,* and in *Pellicot v. Keene,* 181 Md. 135, 28 A. 2d 826 (1942). In *Pellicot,* the six-year-old plaintiff went to a grocery store with his mother, a customer. While there, he went behind the counter and fell into an open trap door. An appeal was taken from a judgment in favor of the defendant storekeeper. Our predecessors affirmed, holding that while the plaintiff and his mother were invited to enter the store, there was neither an express nor an implied invitation to customers to go behind the counter, because it was not a self-service operation. When the plaintiff did so, he became a mere licensee.

An analogous result obtained in *Benson v. Baltimore Traction Co.,* 77 Md. 535, 26 A. 973 (1893), where the infant plaintiff went with his school class to visit the defendant's power plant and fell into a vat. The Court held that where a bare permission to enter the premises was asked, and leave was granted, the visitors were mere licensees.

Although a landlord owes no greater duty of care to a child than to an adult, *Jones v. United States,* 241 F. 2d 26 (4th Cir. 1957), *aff'g,* 138 F. Supp. 727 (D. Md. 1956) ; *Robinson v. Heil,* 128 Md. 645, 653-54, 98 A. 195 (1916) ; *Thompson v. Clemens,* 96 Md. 196, 203, 53 A. 919, 60 L.R.A. 580 (1903) ; *Smith v. Walsh,* 92 Md. 518, 530-534, 48 A. 92, 51 L.R.A. 772 (1901), Freeman knew or should have known that the laundry room was readily accessible to children, a circumstance which made what might otherwise have been a theoretical hazard an actual danger to a person unable to comprehend it, *Katz v. Holsinger,* 264 Md. 307, 314, 286 A. 2d 115 (1972) ; *Farley v. Yerman,* 231 Md. 444, 449, 190 A. 2d 773 (1963) ; *Miller v. Graff,* 196 Md. 609, 616-17, 78 A. 2d 220 (1951) ;

*Pindell v. Rubenstein,* 139 Md. 567, 580-81, 115 A. 859 (1921) ; *Owners' Realty Co. v. Richardson,* 158 Md. 367, 371, 148 A. 543 (1930).

Here, it is clear that the facilities installed in the laundry room were provided for the use of tenants, who were invitees. There is no evidence that such use was restricted to adults, or that entry was in any way restricted to adults and children accompanied by adults. On the contrary, there was testimony that the door was always open, and was usually propped open by one of the trash cans which were customarily stored there.

On these facts, Bruce was neither a trespasser nor a bare licensee: he was an invitee, to whom a duty of reasonable care was owed. This duty was breached when the guard which normally shielded the drive mechanism on the back of the clothes dryer fell off, or was taken off and never replaced, despite the fact that Mrs. Weber and two of her neighbors testified that they had reported the condition by calling the "service number" which appeared on the dryer. It was the breach of this duty which was the sole cause of Bruce's injury, because in *Miller v. Graff, supra,* 196 Md. 609, our predecessors held that a child of four cannot be guilty of contributory negligence, and *see Katz v. Holsinger, supra,* 264 Md. at 313-14 and *Farley v. Yerman, supra,* 231 Md. at 450, which relied on Maryland Code (1957, 1969 Repl. Vol.), Art. 75, § 2 providing that the negligence of a parent cannot be imputed to an infant.[2]

Mrs. Weber testified that she had not done her laundry in Building No. 2 (where she lived and where Bruce was injured) for about a year, because she had complained about the absence of a cover on the motor of the dryer, but the cover had not been replaced. The following is an excerpt from her cross examination:

"Q. And to get to the back of that dryer you

2. No point was made that Mrs. Weber's conduct might have constituted a supervening cause, cf. Farley v. Yerman, supra, 231 Md. at 449.

have to go between the washing machine
here, the dryer here and around like this,
isn't that correct, to get to the back?

"A. To get to the back?

"Q. Yes.

"A. Yes.

"Q. *And is that what Danny [Bruce] told you
he did?*

"A. *He told me he did.*

"Q. *He told you that he tried to stop the dryer
from tumbling, isn't that right?*

"A. *Yes, that is right.*

"Q. And it didn't stop.

"A. When he opened the door, it did not.

"Q. So he went around and tried to stop it?

"A. And the washer and the dryer behind him.

"Q. He went around that dryer and tried to stop
it in some fashion?

"A. Right." (Emphasis supplied)

The trial court instructed the jury on the duty owed
by a landlord to its invitees.

Macke urges on us the argument that when Bruce
chose to go behind the dryer, he became a trespasser or
mere licensee: in other words, that the geographical lim-
it applied to the invitation in *Barnes* and *Pellicot* is
equally applicable here. From this premise, they go on
to say that it was error for the court to refuse to instruct
the jury as to the duty owed a trespasser or licensee, and
to deny the appellants' motions for a directed verdict, for
a judgment *n.o.v.* or for a new trial.

We do not see it quite that way. There was uncon-
troverted testimony that the laundry room in Building
No. 2 was used for the collection of trash, for the storage
of certain of the tenants' effects, that the door was al-
ways open, and was frequently propped open, and that
there had been a problem with children playing there.
There was testimony that if clothing dropped behind the
dryer, it was necessary to go behind the dryer to retrieve

it. Although Mrs. Weber's testimony may have been wanting in explicit technical terminology, there was enough for the jury to conclude that she did her laundry in Building No. 1 because she was apprehensive about the manner in which laundry equipment had been installed in Building No. 2. Even apart from the testimony as regards the telephone calls about the absence of the guard from the drive mechanism—and the existence of such calls was denied by Macke—there was certainly enough for the jury to conclude that the defendants failed to meet the standard of care required to make the premises safe for the tenants.

We think Restatement (Second), *Torts* § 360, at 250 states the rule:

> "A possessor of land who leases a part thereof and retains in his own control any other part which the lessee is entitled to use as appurtenant to the part leased to him, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sublessee for physical harm caused by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care could have discovered the condition and the unreasonable risk involved therein and could have made the condition safe."

The black letter is virtually identical with that which appeared in Restatement, *Torts* § 360, at 976 (1934), a formulation our predecessors cited with approval in *2310 Madison Avenue, Inc. v. Allied Bedding Mfg. Co., Inc., supra,* 209 Md. at 409 and *Sezzin v. Stark,* 187 Md. 241, 250, 49 A. 2d 742 (1946).

The facts here are a far cry from those in *Arshack v. Carl M. Freeman Associates, supra,* 260 Md. 269, where we upheld a directed verdict in favor of the defendant because an 11-year-old plaintiff walking barefoot in the grass cut his foot on a piece of glass imbedded in the earth. There, the landlord's employee testified that the

grounds were policed regularly, and all trash and other objects were removed. An examination of the premises after the accident turned up no glass or other object which caused the injury, so that there was a question of proximate cause. Macke raises the same issue here, but any uncertainty is dispelled by Mrs. Weber's testimony, which came in without objection, that Bruce told her that he was injured when he tried to stop the dryer.

The result which we reach is that of *Primus v. Bellevue Apartments,* 241 Iowa 1055, 44 N.W.2d 347, 25 A.L.R.2d 565 (1950), posited on facts substantially identical with those of the case at bar, except that in *Primus* the injured infant was accompanied to the laundry room by his mother. *See also* Annot., 25 A.L.R.2d *supra,* at 578.

> *Judgments affirmed, costs to be equally divided between appellants Macke Laundry Service Co. of Maryland and Macke Laundry Service Co. of D. C.*