686 A.2d 636

Vincent N. **VALENTINE, et al.**

v.

**ON TARGET, INC.**

No. 236, Sept. Term, 1996.

Court of Special Appeals of Maryland.

Nov. 4, 1996.

As Modified Nov. 13, 1996.

**680**

Clarke F. Ahlers (Sharon E. Haynie, on the brief), Columbia, for Appellants.

Heather Kelly (Kevin J. McCarthy and McCarthy, Bacon & Costello, L.L.P., on the brief), Lanham, for Appellee.

Argued before WILNER, C.J., MURPHY, J., and THEODORE G. BLOOM, Judge (retired), Specially Assigned.

WILNER, Chief Judge.

Vincent N. Valentine appeals from a judgment of the Circuit Court for Anne Arundel County dismissing his complaint against appellee, On Target, Inc. He raises the following issue for our consideration:

> May the victim of a shooting maintain an action against a gun retailer for injuries sustained by the victim as a result of the retailer's failure to prevent the theft and criminal use of the gun?

### Background

Because this appeal arises from the granting of a motion to dismiss, rather than a summary judgment or judgment entered after trial, we must confine ourselves to the allegations in the pleadings. *Faya v. Almaraz,* 329 Md. 435, 444, 620 A.2d 327 (1993); *Briscoe v. City of Baltimore,* 100 Md.App. 124, 128, 640 A.2d 226 (1994). In addition, because

the trial court did not state its reasons for granting appellee's motion to dismiss, we will affirm the judgment if the record discloses any reason why the trial court was legally correct. *Briscoe* at 128, 640 A.2d 226.

Appellee is a gun retailer serving the greater Metropolitan Washington/Baltimore area. On July 17, 1993, one Edward McLeod and another individual, who has not been identified, stole two guns from the store. The complaint gives no details with respect to how McLeod and his confederate managed to steal the guns. On September 26, 1993, an unknown assailant—apparently not McLeod—used one of the stolen guns to shoot and kill appellant's wife, Joanne.

Appellant filed a wrongful death action on behalf of himself and his two minor children and a survivor's action as personal representative of his wife's estate. In both actions, he claimed that appellee owed a duty to Mrs. Valentine and "all other persons situate in or near Anne Arundel County, Maryland" to exercise reasonable care in the display of handguns held out to the public for sale and "to prevent theft and illegal use of the handguns." Although, as noted, he gave no details as to how the guns were stored, what precautions appellee had taken to secure the guns, or how the theft occurred, appellant nonetheless charged that appellee had breached its duty to Mrs. Valentine and all other residents of Anne Arundel County by failing to (1) properly train and supervise its employees, (2) supervise its customers, (3) install adequate security and keep watch over the handguns, (4) properly secure the handguns, (5) interrupt the theft, and (6) give timely notice of the theft to law enforcement authorities and to the community.

Appellee moved to dismiss the complaint for failure to state a claim upon which relief could be granted. It pointed out the lack of any details indicating what appellee had, in fact, done in each of these regards. In argument on the motion, defense counsel indicated that the guns had been in a locked display case, that the police had been promptly notified, and that they had investigated the theft. Those responses, of course, were merely statements of counsel and may not be considered in

determining the adequacy of the complaint on a motion to dismiss. Appellee's principal defense was that it simply owed no duty to Mrs. Valentine. Without explaining its decision, the court dismissed the action.

## *Discussion*

### Introduction:  Duty and Causation

Appellant avers that appellee is liable under a theory of common law negligence.

■ An action for negligence requires, of course, proof of negligence, but it requires proof of other elements as well. "To succeed in a negligence action, the plaintiff must [allege and] establish the following: '(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty.' " *BG & E v. Lane,* 338 Md. 34, 43, 656 A.2d 307 (1995), quoting from *Rosenblatt v. Exxon,* 335 Md. 58, 76, 642 A.2d 180 (1994). It is the first two elements, most particularly the second, that constitute the negligence. PROSSER AND KEETON ON TORTS, § 30, at 164 (5th ed. 1984).

■ Although in many cases there is little or no overlap between the four elements, in some instances the same considerations that relate to or define the element of duty may also relate to or define the element of causation. The element common to both duty and causation is that of foreseeability. Prosser and Keeton speak to the problem at 274–75. To some extent, asking whether the breach of a duty caused the injury begs the question of what the duty was in the first instance. Thus, they point out that the concept of duty "may serve to direct attention to the policy issues which determine the extent of the original obligation and of its continuance, rather than to the mechanical sequence of events which goes to make up causation." *Id.* at 274. Separating the elements in that manner, they acknowledge, is acceptable, "so long as it is not

allowed to obscure the fact that identical questions are often still involved, and buried under the two terms, sometimes so deeply that a good deal of digging is called for to uncover them." *Id.* at 275. *See also Henley v. Prince George's County*, 305 Md. 320, 333–37, 503 A.2d 1333 (1986).

■ This case involves that kind of overlap, and the confusion that accompanies it. Even if, as appellant avers, appellee was negligent in allowing someone to steal the guns from its shop, the theft did not directly cause Mrs. Valentine's death; it was the criminal use of one of the stolen guns by an unidentified third person two months later that caused her death. From the right end of a logical spectrum, that can be said to be a problem of causation: the negligent act, if there was one, did not cause the injury. From the left end of the spectrum, it can be viewed as an issue of duty. Duty, it must be recalled, does not exist in a vacuum; the duty required in law must be to the person injured. It is a focused duty. The question, then, may alternatively be framed as whether appellee had a duty *owing to Mrs. Valentine* to act reasonably to prevent persons from stealing the gun. The missing link between the theft of the gun and the shooting of Mrs. Valentine thus can be said to relate to both elements—the existence of the underlying duty and the causal connection between the breach of a duty and the injury.

In some cases in which this overlap exists, the court can still comfortably see the problem as being predominantly in one area rather than the other. Here, it seems to affect both almost equally, so we shall consider the undisputed missing link in both contexts.

### Duty

"Duty," for purposes of the law of negligence, has been defined as "an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." PROSSER AND KEETON ON TORTS, *supra*, § 53, at 356. In *Village of Cross Keys v. U.S. Gypsum*, 315 Md. 741, 556 A.2d 1126 (1989), the Court of Appeals, in determin-

ing whether an actionable duty of care exists, approved the criteria and analysis employed by the California Supreme Court in *Tarasoff v. Regents of Univ. of California*, 17 Cal.3d 425, 131 Cal.Rptr. 14, 22, 551 P.2d 334, 342 (1976). There, the California court considered the following factors in deciding whether an actionable duty of care exists in a particular case:

"[T]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered the injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost and prevalence of insurance for the risk involved."

*Village of Cross Keys, supra*, 315 Md. at 752, 556 A.2d 1126, quoting *Tarasoff, supra. See also Southland Corp., supra*, 332 Md. at 712–13, 633 A.2d 84.

This analysis, resting in large measure on the notion of foreseeability, compounds the problem. Because the law of negligence protects persons only from *foreseeable* risks of harm, *Henley v. Prince George's County*, 305 Md. 320, 333, 503 A.2d 1333 (1986), foreseeability is a critical element in ascertaining the existence of a duty. Foreseeability must not, however, be regarded as the full equivalent of duty; the fact that a consequence is foreseeable does not, of itself, create a duty to prevent that consequence. As the *Tarasoff* Court observed, there is also a cost/benefit ratio to consider—the burden to both the defendant and the community of imposing the duty weighed against the social benefit of imposing the duty as a means of preventing future harm. Obviously, many sub-factors need to be considered even in that subordinate analysis.

This is a particular problem when the conduct of the defendant merely facilitates other wrongful conduct by a third person that serves as the direct causative agent of harm. As in most areas of the law, the courts have struck a balance in

that setting. The Maryland law was established in *Scott v. Watson*, 278 Md. 160, 359 A.2d 548 (1976), where, in response to a question certified to it by the U.S. District Court, the Court of Appeals held that, as a general rule, "a private person is under no special duty to protect another from criminal acts by a third person, in the absence of statutes, or of a special relationship." *Id.* at 166, 359 A.2d 548. Scott, a tenant of Watson, was shot and killed in the underground garage of the apartment building. His survivor contended that the landlord had both a general duty to protect tenants from such harm and a special duty arising from the landlord's awareness of increasing criminal activity in the neighborhood.

The Court treated the issue as one of ordinary premises liability, which obliges a landlord to use reasonable diligence to keep areas within his control in reasonably safe condition. That was the extent of Watson's duty, it held. He had no special duty to protect his tenants against crimes perpetrated by third persons on his premises. That principle, the Court observed, was merely "a subsidiary of the broader rule that a private person is under no special duty to protect another from criminal acts by a third person, in the absence of statutes, or of a special relationship." *Id.* at 166, 359 A.2d 548, citing RESTATEMENT (SECOND) OF TORTS, § 315 (1965) as authority.

The view expressed in *Scott* has been confirmed in later cases. *See Lamb v. Hopkins*, 303 Md. 236, 253, 492 A.2d 1297 (1985); *cf. Southland Corp. v. Griffith*, 332 Md. 704, 716–17, 633 A.2d 84 (1993), applying the same principle with respect to a duty to aid, *i.e.*, there is no duty on the part of a storeowner to aid a customer from attack by a third person in the absence of statute or special relationship. *See also Ashburn v. Anne Arundel County*, 306 Md. 617, 510 A.2d 1078 (1986) (police officer had no duty to prevent allegedly drunk driver from injuring pedestrian); *Furr v. Spring Grove State Hosp.*, 53 Md.App. 474, 454 A.2d 414, *cert. denied*, 296 Md. 60 (1983) (psychiatrist owed no public duty to prevent harm by failing to detain patient); *Hartford Ins. Co. v. Manor Inn*, 335 Md. 135, 642 A.2d 219 (1994).

Appellant has not informed us of any statute imposing a duty on appellee to prevent the theft and subsequent illegal use of guns held in its store, and we know of none. *Compare Decker v. Gibson Products Co. of Albany, Inc.,* 679 F.2d 212 (11th Cir.1982), finding liability where, in violation of Federal statute, the defendant, a licensed gun dealer, sold a gun to a convicted felon. Nor has he asserted that any special relationship existed between appellee and Mrs. Valentine. Indeed, appellant's argument is to the contrary; he maintains that the duty he seeks to impose ran to all residents of Anne Arundel County.[1]

With two exceptions, which we shall consider momentarily, the cases in which owners or sellers of guns have been held liable for the negligent or unlawful use of their guns by third persons have fallen into two categories. The first is simply an aspect of the doctrine of negligent entrustment. Liability may exist where the defendant "entrusts an instrumentality capable of doing serious harm if misused, to one whom he knows, or has strong reason to believe, to intend or to be likely to misuse it to inflict intentional harm." RESTATEMENT (SECOND) OF TORTS, § 302B, Example E, 92. The illustration used by the RESTATEMENT of that principle is "A gives an air rifle to B, a boy six years old. B intentionally shoots C, putting out C's eye. A may be found to be negligent toward C." *Id.,* Illustration 11.

A corollary, perhaps, to this category is the situation present in *Decker v. Gibson Products Co., supra,* 679 F.2d 212,

---

1. The courts have not been expansive in finding "special relationships" for this purpose. The RESTATEMENT (SECOND) OF TORTS § 314A, notes only four: a common carrier to its passengers; an innkeeper to its guests; a possessor of land to its invitees; and one who is required by law or who voluntarily takes custody of another under circumstances that deprive the other of his normal opportunities for protection. Other sections find a form of special relationship involving a duty of control on the part of parents as to their children (§ 316), masters as to their servants (§ 317), possessors of land as to their licensees (§ 318), and those who take charge of a third person whom they know or should know is likely to cause bodily harm to others if not controlled (§ 319). *See also Lamb. v. Hopkins,* 303 Md. 236, 492 A.2d 1297 (1985).

where, in violation of statute, the defendant sells a gun to a convicted criminal, who then uses it to harm the plaintiff. The theory underlying liability in that setting is an emanation of the negligent entrustment notion—that, where a legislature has identified a class of persons as incompetent to possess weapons due to their past criminal history, it is foreseeable that those persons are likely to use a weapon obtained by them for criminal purposes.

A second category, which overlaps the first, is where the injury occurs on the defendant's premises. Liability in that situation arises from the general duty of a property owner to take reasonable measures to keep the property safe for persons lawfully on it. *See, for example, Naegele v. Dollen,* 158 Neb. 373, 63 N.W.2d 165 (1954); RESTATEMENT (SECOND) OF TORTS, § 344.

Neither of those situations is present in this case. Appellee is not charged with having voluntarily placed a gun in the possession of someone he knew or should have known was likely to use it in an improper manner; nor did the harm to Mrs. Valentine occur on appellee's premises.[2]

The two cases—the only two cited to us or that we have found—in which the owner of a gun has been found liable for harm done by a person who stole the gun are *Pavlides v. Niles Gun Show, Inc.,* 93 Ohio App.3d 46, 637 N.E.2d 404 (1994) and *Strever v. Cline,* —— Mont. ——, 924 P.2d 666 (1996). We find both cases distinguishable for a number of reasons.

In *Pavlides,* four minors, ranging in age from 13 to 17, entered a gun show on two separate occasions and stole numerous handguns which, the evidence showed, were "just

---

2. There is a very limited third category, represented by *Kelley v. R.G. Industries, Inc.,* 304 Md. 124, 497 A.2d 1143 (1985), in which the manufacturer of a particular kind of weapon that has no social utility whatever beyond its use for criminal activity may be held strictly liable to innocent persons injured through the criminal use of the weapon. No such theory was pled in this case; nor would the facts alleged in the complaint support such a theory of recovery.

laying around" on tables. The 13–year–old was permitted to purchase .38 caliber ammunition. As to the guns, the minors said that they "just pick[ed] them up and walk[ed] away with them." 637 N.E.2d at 407. Later that night, one of the minors shot two men with one of the guns. There was evidence that the defendant knew that firearms had been stolen from previous gun shows and understood the risks of allowing unaccompanied minors into such shows.

Actions by the two victims were dismissed on summary judgment. The appellate court reversed, holding that reasonable minds could conclude that the defendant "owed the general public, of which appellants are members, the duty of preventing unsupervised minors' entrance into a gun show where unsecured firearms are displayed." *Id.* at 409. The Court seemed to weave a number of theories, from premises liability to negligent entrustment, into its holding that the harm that occurred was reasonably foreseeable. We need not determine here whether, on those facts, we would have reached the same conclusion as the Ohio Court, for the facts in this case are markedly different. As noted, the complaint before us gives no details as to how the guns were stored, whether McLeod was an unaccompanied minor, or what appellee did or did not do to prevent the theft.

In *Strever,* the child victim was accidentally shot with a handgun that he and several of his friends had stolen from a parked vehicle. His parents sued the owner of the vehicle for negligently leaving his vehicle unlocked. Located in the cab of the vehicle—a pickup truck—were such enticing items as a radar detector, a cassette recorder, binoculars, and a camera. The gun was not visible; it was wrapped in a white bag and stored under the seat. The boys stole a number of items from the vehicle, including the gun. One of the boys, high on marijuana, waved the gun around with his finger on the trigger; accidentally, he shot and killed his friend.

The theories used by the Montana Supreme Court to find liability on the part of the vehicle owner are, to say the least, foreign to Maryland law. The thief was obviously a trespass-

er, but the Court noted that Montana had eliminated the distinctions between the duties owed by a premises owner to trespassers and others. In Montana a person is liable for injury caused to another by his want of ordinary care or skill in the management of his property. Applying the various factors noted in *Tarasoff, supra*, although that case was not mentioned by name, the Court held, at 9 and 10 of the slip opinion, that

"reasonable minds could attach moral blame to [the defendant's] act of storing his gun and ammunition in an unlocked vehicle on a public street with numerous other items of attractive personal property in plain view easily accessible to thieves or simply to curious small children. In addition, requiring a gun owner to safely store his firearm (for example, in this case, by merely locking the vehicle, locking the gun in the glove compartment or removing the gun and ammunition from the vehicle) would not impose an undue burden upon the gun owner in light of the danger involved and the necessity of preventing thefts of firearms or accidental shootings. Finally, various types of liability insurance policies are readily available at a reasonable cost and cover the risks in the negligent use and storage of firearms."

Maryland has not eliminated the distinction between trespassers and others for purposes of premises liability. *Sherman v. Suburban Trust Co.*, 282 Md. 238, 242, 384 A.2d 76 (1978); *BG & E v. Lane, supra*, 338 Md. at 44, 656 A.2d 307. Nor has Maryland adopted the "attractive nuisance" doctrine apparently applied by the Montana Court, with respect to children who are licensees or trespassers. *Hensley v. Henkels & McCoy, Inc.*, 258 Md. 397, 411, 265 A.2d 897 (1970); *Macke Laundry Serv. Co. v. Weber*, 267 Md. 426, 428, 298 A.2d 27 (1972). Apart from these differences, there is no similarity in the facts. Unlike the situation in *Strever*, as we have several times noted, the complaint before us presents no facts, beyond bald conclusory allegations, indicating a lack of due care in the storing of the guns stolen from appellee.

■ On the allegations before us in this case, we conclude that appellee had no duty to Mrs. Valentine, as a member of the public at large, to prevent the theft of the gun by Mr. McLeod and the subsequent criminal use of that gun by some unknown assailant. Apart from the lack of any detail as to what appellee did to protect against theft or what more it could or should have done, there is nothing to indicate that McLeod or his unknown companion were anything other than normal customers or that any particular attention should have been drawn to them. To extend liability to the general public *on these facts, or lack of them,* would effectively create a doctrine of absolute liability, which we find no justification for this Court to do as a matter of common law.

### Causation

■ As we observed, in order to recover in negligence, it is incumbent upon appellant to establish not only the breach of a duty owed by appellee but also that the breach was the proximate cause of his damages and was not "interrupted by a break in the chain of causation." *Liberto v. Holfeldt,* 221 Md. 62, 65, 155 A.2d 698 (1959); *Cramer v. Housing Opportunities Comm'n,* 304 Md. 705, 712–13, 501 A.2d 35 (1985). Appellee contends that, even if it were found to have owed Mrs. Valentine a duty and that its inability to prevent the theft of the gun was a breach of that duty, that breach was not the proximate cause of her death.

■ The current state of the Maryland law of proximate cause, as it would apply in this setting, is, at least facially, somewhat ambiguous. The problem arises when the direct and immediate cause of the ultimate injury is not the negligence of the defendant but intervening conduct that the defendant's negligence allowed or made more likely to occur. The question then is raised whether the intervening event suffices, in law, to break any chain of causation between the injury and the negligent conduct which permitted the intervening event to occur. The answer, in a nutshell, is that the chain is not broken if the intervening event set in motion by

the negligent conduct was foreseeable. The Court of Appeals has stated the principle thusly:

"If the negligent acts of two or more persons, all being culpable and responsible in law for their acts, do not concur in point of time, and the negligence of one only exposes the injured person to risk of injury in case the other should also be negligent, the liability of the person first in fault will depend upon the question whether the negligent act of the other was one which a [person] of ordinary experience and sagacity, acquainted with all the circumstances, could reasonably anticipate or not. If such a person could have anticipated that the intervening act of negligence might, in a natural and ordinary sequence, follow the original act of negligence, the person first in fault is not released from liability by reason of the intervening negligence of another."

*Atlantic Mutual v. Kenney,* 323 Md. 116, 131, 591 A.2d 507 (1991), quoting *State v. Hecht Co.,* 165 Md. 415, 422, 169 A. 311 (1933); *Hartford Ins. Co. v. Manor Inn, supra,* 335 Md. at 160, 642 A.2d 219.

Although this standard is stated in terms of mutual negligence, it applies as well when the intervening act is deliberate. *See Scott v. Watson, supra,* 278 Md. 160, 359 A.2d 548. Under that standard, it is certainly arguable that, given the well-known and pervasive use of handguns in the commission of criminal acts (*see* legislative declaration of policy in Md.Code art. 27, § 36B), the owner of a handgun could and should reasonably anticipate that a person who would *steal* that gun may be likely to use it in further criminal activity, with resulting danger to victims of that further activity. In terms of foreseeable consequences, in other words, thieves can well be placed in the same category as convicted felons. Unlike in the case of bona fide purchasers, who may be presumed to purchase weapons for legitimate purposes, the law could rationally, in light of common experience, equally presume that the thief of a gun will likely use it for unlawful purposes, thereby making such unlawful and potentially dangerous use legally and actually foreseeable.

■■■ The problem is that this kind of argument, reasonably drawn from the general proposition stated by the Court, has been rejected in what to us is an analogous setting—dram shop liability. The argument that a gun owner should anticipate that a thief will use a stolen gun in criminal activity, thereby making harm to third persons foreseeable, is not substantially different than the proposition that a tavern owner who supplies alcohol to an intoxicated customer, whom he knows intends to drive, should anticipate that the customer is likely to injure someone while driving. Yet the Court of Appeals has consistently held that "the law recognizes no relation of proximate cause between a sale of liquor and a tort committed by a buyer who has drunk the liquor." *State v. Hatfield,* 197 Md. 249, 78 A.2d 754 (1951); *Felder v. Butler,* 292 Md. 174, 438 A.2d 494 (1981). *See also Moran v. Foodmaker,* 88 Md.App. 151, 594 A.2d 587, *cert. denied,* 325 Md. 17, 599 A.2d 90 (1991); *Kuykendall v. Top Notch Laminates, Inc.,* 70 Md.App. 244, 520 A.2d 1115, *cert. denied,* 310 Md. 2, 526 A.2d 954 (1987); *Hebb v. Walker,* 73 Md.App. 655, 536 A.2d 113 (1988).

A finding of causal connection in this case, while rationally arguable from the general expressions noted above, would represent a significant extension of liability in this State. As the Court of Appeals has declined to create such an extension in the dram shop context, we are averse to doing it in the gun shop context. For that reason, we conclude that the injury suffered by Mrs. Valentine was not legally caused by the conduct of appellee.

## Conclusion

Because we have concluded that, on the record before us, appellee did not have a duty flowing to Mrs. Valentine to prevent the theft and subsequent criminal use of the guns stolen from its shop and that, even if such a duty existed, the failure of appellee to prevent that theft was not the cause of her injury, we shall affirm the judgment of the circuit court.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANTS.